**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MANUEL MONDRAGÓN,

*Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney
General,

*Respondent.*

No. 11-2133

MANUEL MONDRAGÓN,

*Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney
General,

*Respondent.*

No. 12-1070

On Petitions for Review of Orders
of the Board of Immigration Appeals.

Argued: October 23, 2012

Decided: January 31, 2013

Before NIEMEYER, KING, and AGEE, Circuit Judges.

Petitions denied by published opinion. Judge Niemeyer wrote
the opinion, in which Judge King and Judge Agee joined.

**COUNSEL**

**ARGUED:** Nancy Aileen Noonan, ARENT FOX, LLP, Washington, D.C., for Petitioner. Woei-Tyng Daniel Shieh, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Ralph A. Taylor, Jr., Peter V. B. Unger, Jennifer S. Allen, Eli M. Sheets, ARENT FOX, LLP, Washington, D.C., for Petitioner. Stuart F. Delery, Acting Assistant Attorney General, Civil Division, Carl H. McIntyre, Jr., Assistant Director, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

**OPINION**

NIEMEYER, Circuit Judge:

Manuel Mondragón, a citizen of El Salvador, who entered the United States illegally and is therefore removable, sought discretionary relief from his removal under the Nicaraguan Adjustment and Central American Relief Act ("NACARA"). Mondragón would be eligible for this discretionary relief only if he could show that he had not been previously convicted of an aggravated felony, defined in the Immigration and Nationality Act ("INA") as a crime of violence, for which the term of imprisonment is at least one year. The Board of Immigration Appeals ("BIA" or "Board") found Mondragón ineligible for relief because he was unable to demonstrate that his 1996 Virginia conviction for assault and battery was not a crime of violence.

Although Mondragón could produce no conviction-related documents describing the conduct of his conviction, he offered his own affidavit in which he described in detail his conduct in an effort to show that it was nonviolent. Applying a modified categorical approach, the BIA rejected Mondra-

gón's affidavit and found that the evidence of record was inconclusive as to whether Mondragón's conviction was for a crime of violence. Because Mondragón had the burden of demonstrating his eligibility for discretionary relief, the BIA found that Mondragón failed to carry his burden and ordered him removed.

At their core, Mondragón's arguments on appeal center on the BIA's refusal to permit him to present evidence that his conduct of conviction was nonviolent. He claims that the use of the modified categorical approach is too restrictive in the circumstances where he had the burden of proof and that the BIA should have allowed him to present his affidavit to demonstrate why he was eligible for relief from removal. He also argues that he was improperly disqualified for discretionary relief based on a definition of crime of violence that was adopted after his conviction and made retroactively applicable to him, in violation of his due process rights.

As appealing as Mondragón makes his case, we must ratify the BIA's application of the modified categorical approach. The failure to do so would bring about dramatic—and constitutionally problematic—consequences. Earlier convictions such as Mondragón's would be retried in immigration proceedings, putting to question the finality of earlier adjudications, and unfairness would inevitably result, as one party or the other would be unable to retrieve lost evidence, witnesses, or memories. Moreover, eligibility for relief from removal would no longer depend on the *categorical* fact that an alien had been convicted of a crime of violence, as provided for in NACARA, but rather on the retrial of the underlying facts for determination of whether the *conduct* constituted a crime of violence. As we explain more fully herein, both the law and prudence require that we reject Mondragón's arguments. We also reject his argument that the statute was improperly made retroactive. Accordingly, we deny his petitions for review.

## I

Mondragón entered the United States illegally in 1990 and, shortly after arriving, applied for and was granted temporary protected status based on an ongoing civil war in El Salvador. He later married and now has three children who were born in the United States.

In August 1995, Mondragón applied for asylum pursuant to a settlement agreement reached in *American Baptist Churches v. Thornburgh*, 760 F. Supp. 796 (N.D. Cal. 1991). While his asylum petition was pending, Mondragón pleaded guilty in early 1996 to a "misdemeanor" assault and battery charge in Virginia General District Court and was sentenced to one year's imprisonment, suspended. The only record relating to this conviction is a two-page document that served as a warrant for his arrest and recorded the disposition of the charge. That document indicates that on January 10, 1996, Mondragón pleaded guilty to assaulting and battering Jamship Kashani, in violation of Virginia Code § 18.2-57, and that he was sentenced to one year's imprisonment, suspended.

Because of this conviction, the Asylum Office in Arlington, Virginia, denied Mondragón's application for asylum on April 2, 2007, as the settlement agreement in *American Baptist Churches*, on which he relied to make his application, provided that class members who had been convicted of an "aggravated felony" as defined in the INA (*i.e.*, a crime of violence for which the term of imprisonment is at least one year) were not eligible for the benefits of the agreement. As Mondragón had entered the country illegally and thus remained removable, he was ordered to appear for removal proceedings. *See* 8 U.S.C. § 1182(a)(6)(A)(i) (providing that "[a]n alien present in the United States without being admitted or paroled . . . is inadmissible").

Mondragón conceded removability, but he applied for relief from removal, this time under § 203 of NACARA, Pub. L.

No. 105-100, 111 Stat. 2160, 2198 (1997), which provides that for NACARA-eligible aliens, "the Attorney General *may* . . . cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States." (Emphasis added).* NACARA further provides, however, that an alien who has committed an "aggravated felony," as defined in the INA, is ineligible for its discretionary relief. *Id.*

On January 10, 1996, when Mondragón pleaded guilty to assault and battery, his conviction did not constitute an "aggravated felony." At that time, the term "aggravated felony" was defined in the INA to include a crime of violence for which the term of imprisonment was at least *five years*, whereas the maximum sentence for Virginia's misdemeanor assault and battery was *one year*. *See* 8 U.S.C. § 1101(a)(43)(F) (1995); Va. Code Ann. § 18.2-11. But the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which was enacted in 1996 *after* Mondragón had pleaded guilty, amended the definition of "aggravated felony" to be a crime of violence for which the term of imprisonment was at least *one year*. *See* IIRIRA §§ 321(a)(3), 322(a), Pub. L. No. 104-208, 110 Stat. 3009, 3009-627, 3009-629 (1996) (codified at 8 U.S.C. § 1101(a)(43)(F) (2006)). Moreover, IIRIRA made this new definition of "aggravated felony" retroactive, providing that the amendment was to "apply to actions taken on or after the date of enactment of [IIRIRA], *regardless of when the conviction occurred*." IIRIRA § 321(c) (emphasis added); *see also id.* § 322(c).

At Mondragón's removal hearing on December 22, 2008, the government challenged Mondragón's eligibility for NACARA relief from removal, contending that Mondragón's 1996 conviction was an "aggravated felony" which disqualified him from that relief. Mondragón maintained, however,

---

*NACARA, which is not codified in the U.S. Code, was signed into law on November 19, 1997.

that at the time he pleaded guilty, his conviction did not meet the definition of aggravated felony because the crime was not punishable by imprisonment for at least five years.

An immigration judge ("IJ") denied Mondragón's application for relief from removal in a decision rendered on August 16, 2010, noting that IIRIRA § 321's aggravated-felony definition applied retroactively, so that Mondragón's 1996 conviction qualified as an aggravated felony "notwithstanding the fact that at the time he made the plea, he could not have been aware of the immigration consequences." The IJ also applied a modified categorical approach to assess whether Mondragón's conviction was for a crime of violence and concluded that the available record of Mondragón's 1996 conviction, while complete, was inconclusive on the issue. Because Mondragón bore the burden of proof in seeking relief from removal, the IJ ruled that the inconclusive record was insufficient to show that Mondragón was eligible for cancellation of removal under NACARA.

Mondragón appealed the IJ's decision to the Board of Immigration Appeals and requested that it remand the case to permit him to present evidence demonstrating that he had not committed a "crime of violence." He also argued that the retroactive application of the statutory definition of "aggravated felony" was unconstitutional. The Board affirmed the IJ, finding that Mondragón did not satisfy his burden of demonstrating eligibility for NACARA's discretionary relief. It also agreed with the IJ that "the most recent amendments to the definition of 'aggravated felony' apply regardless of the date of the conviction." Finally, the Board declined to remand the case, finding that Mondragón's request to present additional evidence about his 1996 conviction was "not supported by any pertinent, persuasive legal authority or by any affidavit from [Mondragón] or other evidence necessary to demonstrate that a remand is warranted." From this decision of the Board, Mondragón filed his first petition for review in this court.

At the same time that he filed his first petition for review, Mondragón also filed a motion with the Board to reopen and reconsider its decision, now supported by his affidavit, in which he stated that during the encounter leading to his 1996 conviction, he was not the aggressor and that any assault was not violent. The affidavit described in detail the incident giving rise to the charge and stated that he was merely taking "this man by one arm to move him away from my car, just like you would take your child by the arm across the street." He asserted that he "did not hurt him. I didn't hit him, and there were no injuries. I did not do anything violent at all."

The Board denied Mondragón's motion and his request that "his own personal account of what occurred should be considered along with the record of conviction." From the Board's ruling, Mondragón filed his second petition for review.

Both petitions for review are now before us.

## II

Mondragón contends first that the retroactive application of IIRIRA § 321(a)(3) (defining "aggravated felony" to be a crime of violence for which the term of imprisonment is at least *one year*) "violates bedrock constitutional principles of fairness and due process." He emphasizes that at the time he pleaded guilty to Virginia assault and battery, "his conviction [was not an aggravated felony as defined by the INA and] would not have precluded him from cancellation of removal." Only by applying IIRIRA § 321 retroactively is he denied the possibility of relief. Although he does not rest his retroactivity argument on any specific violation of the Due Process Clause, he argues, relying on *INS v. St. Cyr*, 533 U.S. 289 (2001), that the application of amendments made to the INA *after* he pleaded guilty violates "[e]lementary considerations of fairness," as individuals should "have an opportunity to know what the law is and to conform their conduct accordingly." (Quoting *St. Cyr*, 533 U.S. at 316 (internal quotation marks

and citation omitted)). He thus attempts to build his due process claim on *St. Cyr*, reasoning:

> Like the *St. Cyr* respondent, at the time Mr. Mondragón entered his guilty plea, it would not have rendered him ineligible for relief from deportation. Thus, as the Court reasoned in *St. Cyr*, applying his 1996 guilty plea to retroactively strip Mr. Mondragón of eligibility for cancellation of removal would contravene established principles of fair notice, repose, informed decision-making, and reasonable reliance on the law—principles that serve as a bedrock of the United States judicial system and foundational precepts of the rule of law.

Mondragón's argument makes a strong claim to fairness and, at the same time, implicitly provides sharp criticism of Congress in making its choice to apply its 1996 amendment to the definition of "aggravated felony" retroactively. But his argument falls short of demonstrating a violation of the Due Process Clause.

It is uncontroverted that Mondragón entered the United States illegally and is therefore removable. *See* 8 U.S.C. § 1182(a)(6)(A)(i). But Mondragón sought to avoid removal by invoking the relief of cancellation of removal under NACARA § 203. Relief under NACARA is given to a qualifying alien *in the discretion* of the Attorney General, and no matter how strong and appealing an alien is able to make his case, relief is "not *a matter of right* under any circumstances, but rather is in all cases a matter of grace." *Jay v. Boyd*, 351 U.S. 345, 354 (1956) (emphasis added). Mounting a successful due process challenge to the Executive Branch's exercise of discretion is a difficult undertaking. As Justice Scalia observed in his dissent in *St. Cyr*:

> The furthest our cases have gone in imposing due process requirements upon analogous exercises of

Executive discretion is the following. (1) We have required "*minimal* procedural safeguards" for death-penalty clemency proceedings, to prevent them from becoming so capricious as to involve a "state official flipp[ing] a coin to determine whether to grant clemency" . . . [and] (2) [w]e have recognized the existence of a due process liberty interest when a State's statutory parole procedures prescribe that a prisoner "shall" be paroled if certain conditions are satisfied.

533 U.S. at 345-46 (Scalia, J., dissenting) (first alteration in original); *see also Mohammed v. Ashcroft*, 261 F.3d 1244, 1251 (11th Cir. 2001) (holding that the alien has "no constitutionally-protected right to discretionary relief from removal, and therefore cannot—at least in these circumstances—claim a substantive Due Process violation based upon Congress's decision in IIRIRA to make a broader class of aliens ineligible for this relief"); *Huicochea-Gomez v. INS*, 237 F.3d 696, 700 (6th Cir. 2001) (noting that, in the context of a claim of ineffective assistance of counsel, there is no constitutionally protected liberty interest infringed by denying cancellation of removal). Indeed, the Constitution would not prohibit Congress from eliminating all discretionary authority to give relief to illegal aliens who commit aggravated felonies. This is indicative of the well-established proposition that "[a] constitutional entitlement [*i.e.*, one protected by the Due Process Clause] cannot 'be created—as if by estoppel—merely because a wholly and expressly discretionary state privilege has been granted generously in the past.'" *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981) (quoting *Leis v. Flynt*, 439 U.S. 438, 444 n.5 (1979)).

Even when the discretion of the Executive is not at issue, Congress may, consistent with the Due Process Clause, alter rights and responsibilities retroactively so long as it has a rational basis for doing so. *See, e.g.*, *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 191 (1992) (upholding the retroactive effect of economic legislation that had a "legitimate legisla-

tive purpose furthered by rational means") (citing *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730 (1984)); *see also United States v. Yacoubian*, 24 F.3d 1, 7-8 (9th Cir. 1994) (applying rational basis test to decide whether retroactive application of a provision of the INA violates an alien's due process rights); *Hamama v. INS*, 78 F.3d 233, 235-36 (6th Cir. 1996) (same).

There is little question that in enacting a new definition of "aggravated felony" and making it retroactive, Congress had a rational basis for doing so. By imposing a stiffer requirement for discretionary relief and making it retroactive, Congress was implementing its policy of increasing the protection of American society by reducing benefits to illegal aliens who commit aggravated felonies. *See Kuhali v. Reno*, 266 F.3d 93, 111 (2d Cir. 2001) (rejecting a due process challenge to IIRIRA § 321, finding that Congress had a "legitimate interest in protecting society from the commission of aggravated felonies" and deporting those aliens "is a rational means of furthering that interest"); *Cordes v. Gonzales*, 421 F.3d 889, 895-96 (9th Cir. 2005) (same), *rev'd for lack of jurisdiction sub nom. Cordes v. Mukasey*, 517 F.3d 1094 (9th Cir. 2008); *see also Lovan v. Holder*, 574 F.3d 990, 997 (8th Cir. 2009); *Ahdab v. Gonzales*, 189 F. App'x 73, 78-79 (3d Cir. 2006); *Lopez-Elias v. Reno*, 209 F.3d 788, 793 n.12 (5th Cir. 2000).

For these reasons, it is not surprising that we have found no decision that has held that IIRIRA § 321(c)'s retroactive application of the new definition of "aggravated felony" is unconstitutional.

Despite—or perhaps because of—the minimal protections afforded by the Due Process Clause in this area, Mondragón urges us, based on *St. Cyr*, to evaluate independently the injustice imposed by this retroactive statute. But *St. Cyr* does not advance his case. Although the facts in *St. Cyr* were much like those here, its holding was confined to a statutory interpretation of an ambiguous provision of the INA. By its own

terms, *St. Cyr* limits its applicability to those situations where Congress leaves the issue of retroactivity unresolved.

Enrico St. Cyr, a lawful permanent resident, pleaded guilty in state court to a charge of selling a controlled substance, and his conviction made him deportable. *See St. Cyr*, 533 U.S. at 293. The government maintained that St. Cyr was ineligible for a waiver of deportation due to the retroactive application of a provision adopted after his guilty plea. St. Cyr contended that at the time he pleaded guilty, he would have been eligible for a waiver of deportation at the discretion of the Attorney General and that IIRIRA's subsequent amendment of the INA to withdraw that discretion was not retroactively applicable. *See id.*

The Supreme Court agreed with St. Cyr, holding that the government impermissibly construed the ambiguous statutory provision to be retroactive. The Court's analysis was expressly predicated on the ambiguity of the provision at issue. *See id.* at 314 ("The absence of a clearly expressed statement of congressional intent also pervades our review of the merits of St. Cyr's claim"). Thus, the Court's decision was confined to an interpretation of the statute at issue. The Court recognized that if Congress had been clear about its intent to make the statute retroactive, such clearly expressed intent would have prevailed and overcome the general presumption against the retroactive application of statutes. *See id.* at 316 ("Despite the dangers inherent in retroactive legislation, it is beyond dispute that, within constitutional limits, Congress has the power to enact laws with retrospective effect").

Here, we do not face the situation presented in *St. Cyr*. Congress stated clearly that IIRIRA § 321 applies retroactively, *see* IIRIRA § 321(c) (providing that the new definition of "aggravated felony" applies "to actions taken on or after the date of enactment of this Act, *regardless of when the conviction occurred*" (emphasis added)), and Mondragón does not contend otherwise. Thus, *St. Cyr*, because it addresses only

how to construe an ambiguous provision, provides no service in the face of this unambiguous provision.

Finally, Mondragón contends that the statute's retroactivity violates the Sixth Amendment. He argues that "the retroactive application of IIRIRA § 321(a)(3) . . . effectively deprived him of effective assistance of counsel during the plea-bargaining process in his 1996 case." (Citing *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012)). It is not clear to us, however, that Mondragón's trial counsel could have been ineffective in the circumstances of this case. To be sure, in *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010), the Supreme Court held that the Sixth Amendment requires a criminal defendant's counsel to "inform her client whether his plea carries a risk of deportation." But this duty has not been made retroactive. *See United States v. Mathur*, 685 F.3d 396 (4th Cir. 2012). Moreover, at the time Mondragón pleaded guilty, his conviction did not carry any risk of deportation since it was under the five-year threshold of the pre-IIRIRA definition of "aggravated felony."

But whatever argument that Mondragón could make to challenge the performance of his counsel during his prior conviction, such argument is not one that we can consider years after his prior conviction became final. *See Custis v. United States*, 511 U.S. 485, 497 (1994) (rejecting a defendant's challenge during sentencing to the use of a prior conviction based on a claimed ineffective assistance of counsel during the course of that conviction).

In *Custis*, the Court advanced several grounds for refusing to reopen prior convictions to determine whether the defendant there received ineffective assistance of counsel. It noted that the Armed Career Criminal Act of 1984 ("ACCA"), which provides for an enhanced sentence based on prior qualifying convictions, "focuses on the *fact* of the conviction and nothing suggests that the prior final conviction may be subject to collateral attack for potential constitutional errors before it

may be counted." 511 U.S. at 491 (emphasis in original). In addition, the Court highlighted jurisprudential and practical reasons for precluding a defendant subject to ACCA's enhancement from using the federal sentencing forum to gain review of state convictions. *See id.* at 497. Explaining the Court's recitation of the practical difficulties of reopening prior proceedings to evaluate the performance of counsel, we have said:

> The [*Custis*] Court concluded that "Congress did not prescribe and the Constitution does not require such delay and protraction of federal sentencing process." Such review would burden the district courts with the task of "rummag[ing] through frequently nonexistent or difficult to obtain state court transcripts or records that may date from another era, and may come from any one of the 50 states." The Court also acknowledged the "interest in promoting the finality of judgments," which applies "with at least equal force" in the sentencing context as it does in a habeas corpus action.

*United States v. Bacon*, 94 F.3d 158, 162-63 (4th Cir. 1996) (internal citations omitted).

The same reasoning that led *Custis* to limit collateral attacks on prior convictions used for sentencing purposes has led the Supreme Court, as well as lower courts, to apply a similar limitation in habeas proceedings challenging a sentencing enhancement. *See Daniels v. United States*, 532 U.S. 374, 382-83 (2001) ("The presumption of validity that attached to the prior conviction at the time of sentencing is conclusive, and the defendant may not collaterally attack his prior conviction through a motion under § 2255"); *Lackawanna Cnty. Dist. Attorney v. Coss*, 532 U.S. 394, 403-04 (2001) ("If that [state] conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the

ground that the prior conviction was unconstitutionally obtained"). Indeed, the same reasoning has also led courts to apply *Custis* to the immigration context. *See, e.g.*, *Drakes v. INS*, 330 F.3d 600, 604 (3d Cir. 2003) ("There is no meaningful difference between a collateral attack on an expired state conviction underlying removal proceedings and a collateral attack on an expired state criminal conviction underlying an enhanced sentence"); *Taylor v. United States*, 396 F.3d 1322, 1330 (11th Cir. 2005) (same).

The same theoretical and practical concerns that animate this entire line of cases are present here. First, NACARA focuses on the *fact* of conviction in precluding eligibility for relief from removal, just as the ACCA was observed to do in *Custis*. *See* 511 U.S. at 490-91. Second, there is a strong need for the finality of convictions as they relate to immigration consequences. *See Daniels*, 532 U.S. at 381. Finally, the same practical concerns that favored precluding the reopening of a prior conviction under the *Custis* line of cases applies here. *See id.* at 379.

In short, whether Mondragón lodges his argument on his claim that counsel was in fact ineffective at the plea hearing or should be deemed ineffective by operation of a retroactive statute, we reject his Sixth Amendment challenge.

At bottom, we conclude that IIRIRA § 321(c)'s retroactive application of the revised definition of "aggravated felony" survives Mondragón's constitutional challenges.

III

Mondragón also contends that the Board erred in denying him the right to present evidence of his conduct of conviction to demonstrate that his prior conviction was not for a crime of violence. More particularly, he challenges the BIA's use of a modified categorical approach, which limited its consideration to the record of conviction.

Mondragón acknowledges that he carries the burden of demonstrating his eligibility for relief from removal. He also acknowledges that when the modified categorical approach is used, he is unable to demonstrate that his conviction for assault and battery was nonviolent. He argues that because the burden of proof rests on him, the evidentiary limitations inherent in the categorical and modified categorical approaches should not apply. He reasons that the policies underlying these approaches may be suited for the circumstances when the government bears the burden of proof, but those policies do not support the use of these approaches in a proceeding such as this, where the alien bears the burden of proof:

> [A]pplying the categorical approach to cases such as Mr. Mondragón's, necessarily means that any deficiencies in the record are resolved in favor of the Government, making it legally impossible for applicants such as Mr. Mondragón with inconclusive records of conviction to meet their burden of proof through no fault of their own.

Moreover, he claims that the application of a modified categorical approach deprives him of the statutorily granted right to present evidence on his own behalf. *See* 8 U.S.C. § 1229a(b)(4)(B).

We begin with an understanding of the statutory context. The government bears the burden of showing removability by clear and convincing evidence. 8 U.S.C. § 1229a(c)(3)(A); *see also Salem v. Holder*, 647 F.3d 111, 114 (4th Cir. 2011). And the burden to demonstrate eligibility for discretionary relief from removal rests on the alien seeking the relief. 8 U.S.C. § 1229a(c)(4)(A).

In this case, Mondragón seeks discretionary relief from removal under NACARA and therefore had to carry the burden of demonstrating his eligibility. Because he had a prior

conviction for assault and battery that put in question his eligibility for relief, he had to show that the conviction was not for an "aggravated felony" as defined in the INA. *See* NACARA, Pub. L. No. 105-100, § 203(b), 111 Stat. 2160, 2198; *see also* 8 C.F.R. § 1240.66(a) ("To establish eligibility for special rule cancellation of removal, the applicant . . . must not have been convicted of an aggravated felony"); *Salem*, 647 F.3d at 114. An "aggravated felony" in the INA includes a crime of violence that is punishable by a term of imprisonment of at least one year. *See* 8 U.S.C. § 1101(a)(43)(F); 18 U.S.C. § 16. Inasmuch as a "crime of violence" involves the use of "violent force, that is, force capable of causing physical pain or injury to another person," *United States v. White*, 606 F.3d 144, 153 (4th Cir. 2010) (quoting *Johnson v. United States*, 130 S. Ct. 1265, 1271 (2010)), Mondragón therefore had the burden of showing that his prior conviction was not for a crime involving the use of "force capable of causing physical pain or injury to another person."

In January 1996, Mondragón pleaded guilty to "misdemeanor" assault and battery in the Virginia General District Court, which was punishable by up to one year's imprisonment. *See* Va. Code Ann. §§ 18.2-57, 18.2-11. He was sentenced to one year's imprisonment, and the sentence was suspended. The record of his conviction only reveals that Mondragón pleaded guilty and that he assaulted and battered Jamship Kashani, in violation of § 18.2-57, without giving further detail. Because the crime of conviction could cover conduct that was violent or nonviolent, it cannot be ascertained from this record of conviction whether the conviction was for a crime of violence.

We have previously concluded that the presentation of an inconclusive record of conviction, such as in this case, is insufficient to meet an alien's burden of demonstrating eligibility for cancellation of removal. *See Salem*, 647 F.3d at 116. Thus, the government argues that because Mondragón has

presented only an inconclusive record of conviction, his peti-tion for discretionary relief should likewise fail.

But Mondragón points to other language in *Salem*—that the *Salem* petitioner "made no attempt to offer additional evi-dence to the IJ beyond the record of conviction"—to justify the admission of additional evidence in this case. 647 F.3d at 119. And in this case, Mondragón proffered his affidavit describing the events that led to his arrest and conviction. In the affidavit, he stated in some detail his encounter with Jam-ship Kashani:

> I wasn't going to get aggravated, because I had always been taught to respect people older than me. But I needed to leave, and this was getting ridicu-lous. I took this man by one arm to move him away from my car, just like you would take your child by the arm across the street, and he was resisting, but I pulled him away from my car door so I could get in. I walked him about ten feet away from my car. Then I got in my car and I left. I also locked the doors right away, to protect myself from this crazy, scary man. . . . That was it. I did not hurt him. I didn't hit him, there were no injuries.

Even though Mondragón's call for a more expansive evi-dentiary inquiry rings with the tone of fairness, it nonetheless fails to address the many reasons that support the BIA's use of the modified categorical approach. Were we to agree with Mondragón, we would have to require the IJ to consider not only Mondragón's evidence about his conduct leading to his assault and battery conviction, but also evidence that the gov-ernment might be able to retrieve about the incident. This could well include testimony from the victim and witnesses to the assault. The judge would then be put in the position of retrying the assault and battery case, which had been disposed of more than 10 years earlier. Aside from the overburdening complications of retrying a prior case, expanding the current

case to such a degree would inevitably prove to be unfair to one party or the other because of the loss of evidence, witness testimony, and memory.

Moreover, while Mondragón's conviction was based on his guilty plea, the accommodation that Mondragón seeks in this case would also apply if he had been convicted by a jury. In either case, the IJ would then be put in the position of redetermining the facts of conviction that had previously been determined by either a guilty plea or a jury, undermining the finality of prior convictions.

In the face of these perils, it is significant that Congress, in enacting provisions of the INA, did not rest disqualification from discretionary relief on the facts of an alien's *conduct* underlying a prior qualifying crime. Rather, it disqualified an alien who was *convicted* of a qualifying crime. The fact of conviction is a more limited fact than are the facts of conduct underlying the conviction, and in resting disqualification on the conviction of a qualifying crime and not on the conduct of conviction, Congress adopted a categorical approach that turns on the *fact of conviction* and the *elements of the crime*.

These considerations led the Supreme Court to adopt the categorical and modified categorical approaches in the context of criminal sentencing when determining whether to enhance a sentence based on a prior *conviction*. *See Taylor v. United States*, 495 U.S. 575 (1990); *Shepard v. United States*, 544 U.S. 13 (2005).

First, the *Taylor* Court found that the "language of [the Armed Career Criminal Act] generally support[ed] the inference that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories." 495 U.S. at 600. That is, Congress sought to give effect to any conviction that fell within certain categories—*i.e.*, violent crimes—for purposes of enhancing sentences. In the immigration context, Congress

did something similar. It gave effect—ineligibility for discretionary relief—to convictions that fell within the same category, "violent crimes." *See* NACARA § 203; 8 C.F.R. § 1240.66(a); 8 U.S.C. § 1101(a)(43). The language in these statutes gives effect not to the underlying conduct, but to the *fact* of conviction and the *elements* of the crime.

Second, the Court in *Taylor* found that "the legislative history of the enhancement statute showed that Congress generally took a categorical approach to predicate offenses." 495 U.S. at 601. The plain language of the "aggravated felony" class of immigrants, likewise, manifests Congress' categorical approach. In prohibiting aliens convicted of aggravated felonies (*i.e.*, violent crimes for which punishment was at least one year) from receiving discretionary relief, Congress necessarily targeted that category. Moreover, with respect to the immigration laws, Congress has been particularly active by altering the size of that category. *See* IIRIRA § 321(a)(3) (reducing the sentence term from five years to one year in the definition of "aggravated felony").

Finally, *Taylor* limited its review to the record of conviction given "the practical difficulties and potential unfairness of a factual approach" that would go behind the conviction. 495 U.S. at 601. The Court noted that a categorical approach would prohibit "an elaborate factfinding process regarding the defendant's prior offenses." *See id.* at 601. These concerns are particularly acute in the immigration context, given the possibly lengthy periods of time since a conviction and the lack of other evidence available to the immigration judge. Thus, limiting review to the record of conviction allows "sentencing courts [to] avoid conducting 'mini-trials'" that would create unreliable and time-consuming wastes of judicial resources. *United States v. Spence*, 661 F.3d 194, 198 (4th Cir. 2011).

It is thus apparent that the factors embraced by the Supreme Court in *Taylor* are not relevant solely to criminal sentencing statutes. Rather, the concerns expressed there are also relevant

to the analysis of any statute that makes the *fact of a conviction* of a *specified category of crime* essential to application of the statute. Indeed, for that very reason, we have applied the modified categorical approach of *Taylor* and *Shepard* to the INA. *See Soliman v. Gonzales*, 419 F.3d 276, 284 (4th Cir. 2005); *see also Gertsenshteyn v. U.S. Dep't of Justice*, 544 F.3d 137, 143 (2d Cir. 2008) ("We have adopted a 'categorical approach' to deciding whether a crime of conviction fits within the definition of 'aggravated felony' in § 1101(a)(43), thereby rendering an alien removable under § 1227(a)(2)(A)(iii)"). And we conclude that the BIA was correct in applying it here.

Mondragón also contends that a modified categorical approach abridges his statutory right to present evidence on his own behalf. *See* 8 U.S.C. § 1229a(b)(4)(B). But Mondragón reads this right too broadly. His right goes only to the opportunity to present evidence relevant to an issue that is properly before the immigration judge. Here, that issue is whether Mondragón's *conviction* renders him ineligible for relief, not the *conduct* of conviction.

Mondragón was convicted of Virginia assault and battery, the elements of which are broad and allow for the possibility that Mondragón was convicted of either a crime of violence or a crime of nonviolence. *See United States v. White*, 606 F.3d 144, 148-49 (4th Cir. 2010). And "when the fact of conviction and the statutory definition of the offenses are unduly vague or ambiguous," as is the case with Virginia's assault and battery statute, a court can employ the modified categorical approach. *Id.* at 155 (quoting *United States v. Harcum*, 587 F.3d 219, 223 (4th Cir. 2009)).

Consequently, Mondragón was statutorily authorized to present evidence resolving the ambiguity of his *conviction* in accordance with the modified categorical approach, using what are known as *Shepard* documents. *See Shepard v. United States*, 544 U.S. 13, 20-21 (2005). But because *Shep-*

*ard* documents did not exist or were not available, Mondragón sought to introduce extrinsic evidence about his *conduct*. But this evidence was not relevant to demonstrating whether his prior conviction categorically denied his eligibility for relief and therefore did not fall within the class of evidence protected by 8 U.S.C. § 1229a(b)(4).

To press his argument further, Mondragón relies on the Supreme Court's decision in *Nijhawan v. Holder*, 557 U.S. 29, 41-43 (2009), where the Court considered facts extraneous to those generally considered under the categorical and modified categorical approaches. But *Nijhawan* is distinguishable because its holding relied on *statutory* factors that focused not only on the fact of conviction for the crime of fraud but also on the fact that the fraud crime involved losses greater than $10,000. But when looking at a statute which turns simply on whether the defendant or applicant had a prior conviction for a crime of violence, the focus remains on the *fact of conviction* and the *elements of the crime*.

At bottom, the government has demonstrated Mondragón's removability, and Mondragón has failed to demonstrate that he is eligible for discretionary relief from removal, as afforded by NACARA. The burden rests on him, and unfortunately, he was unable to meet it.

For the foregoing reasons, Mondragón's petitions for review are

*DENIED*.