**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-1447**

ERWIN TOBAR-BARRERA,

        Petitioner,

    v.

ERIC H. HOLDER, JR., Attorney General,

        Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued:  September 17, 2013      Decided:  October 29, 2013

Before GREGORY, DAVIS, and KEENAN, Circuit Judges.

Petition granted in part and denied in part by unpublished opinion. Judge Davis wrote the opinion, in which Judge Gregory joined. Judge Keenan wrote a dissenting opinion.

**ARGUED:** Timothy William Davis, LAW OFFICE OF TIMOTHY W. DAVIS, LLC, Baltimore, Maryland, for Petitioner.  Jonathan Aaron Robbins, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:** Stuart F. Delery, Acting Assistant Attorney General, William C. Peachey, Assistant Director, Matthew Allan Spurlock, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

DAVIS, Circuit Judge:

Petitioner Erwin Tobar-Barrera ("Tobar-Barrera"), a native and citizen of Guatemala, seeks review of the Board of Immigration Appeals' ("Board") order dismissing his appeal of the decision by an Immigration Judge ("IJ") finding him ineligible for discretionary relief from removal under Section 203 of the Nicaraguan Adjustment and Central American Relief Act ("NACARA").[1] The IJ found Tobar-Barrera ineligible because he had been convicted of a disqualifying aggravated felony and ordered him removed. For the reasons that follow, we grant in part and deny in part the petition for review. We vacate the Board's order and remand for further proceedings consistent with this opinion.

## I.

The record reveals that the then-operative Immigration and Naturalization Service ("INS") initiated removal proceedings on April 27, 1990. But those proceedings were administratively closed on September 6, 1991 to allow Tobar-Barrera to join a class of Guatemalans who had been offered special process for

---

[1] Pub. L. No. 105-100, 111 Stat. 2160, 2193-2201 (1997), amended by Pub. L. No. 105-139, 111 Stat. 2644, 2644-45 (1997), (codified as amended in scattered sections of 8 U.S.C.).

seeking asylum in the United States.[2] For the fourteen years that followed, there was no appreciable change in Tobar-Barrera's immigration status. Tobar-Barrera filed his asylum application in May 2005. His application remained pending for two years, awaiting review by the U.S. Citizenship and Immigration Service ("USCIS"), the agency that now reviews such applications. The application was denied.

According to USCIS, Tobar-Barrera was not entitled to relief because he had a disqualifying aggravated felony conviction, manslaughter. USCIS applied the definition of aggravated felony found in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110

---

[2] While Tobar-Barrera's removal proceedings were pending, the landmark settlement in American Baptist Churches v. Thornburgh, 760 F. Supp. 796 (N.D. Cal. 1991) ("ABC Settlement") was reached. The ABC Settlement involved a class action settlement among various government agencies (including the INS) and a plaintiff class of Salvadorans and Guatemalans who had fled their countries. The suit alleged that the United States government had politicized its asylum policy by discriminatorily denying refugee status to persons fleeing repressive regimes supported by the United States.

The ABC Settlement, entered in January 1991, stipulated that the INS would give de novo, unappealable hearings to most Salvadoran and Guatemalan asylum applicants who were present in the United States as of September 19, 1990, for Salvadorans, or October 1, 1990, for Guatemalans. Id. at 799-800. This right extended to all those who had previously been denied asylum, as well as those who had not yet filed for asylum or whose cases were still pending. Id. at 800. The settlement required the INS to stay pending deportation proceedings against class members. Id. at 805.

Stat. 3009-546 (1996) ("IIRIRA"). IIRIRA broadened the kinds of offenses that qualified as "crime of violence" aggravated felonies by decreasing the requisite imprisonment term from five years to one year. See IIRIRA § 321(a)(3). Under the pre-IIRIRA definition, Tobar-Barrera's manslaughter conviction is not a disqualifying aggravated felony.

Tobar-Barrera's immigration proceedings languished for another two years until the Department of Homeland Security ("DHS") moved to re-calendar his removal proceedings in September 2009 because USCIS had found Tobar-Barrera ineligible for relief. In the interim, Tobar-Barrera attacked USCIS's adverse ruling by filing an action for declaratory and injunctive relief in the United States District Court for the District of Maryland. Tobar-Barrera v. Napolitano, No. 09-3064, 2010 WL 972557 (D. Md. Mar. 12, 2010). The district court ordered the government to provide Tobar-Barrera with a de novo asylum adjudication because USCIS erroneously found him ineligible for relief. Id. at *8. There was no appeal from that ruling.

Tobar-Barrera filed a new application for relief in July 2010. He argued that the record of conviction did not conclusively show that he had committed an aggravated felony and asked the IJ to consider new evidence – his own live testimony – as further proof that he was not convicted of an aggravated

4

felony. The IJ ruled that such testimony was inadmissible extrinsic evidence, and therefore could not be considered. She further ruled that Tobar-Barrera's conviction was an aggravated felony under IIRIRA, making him ineligible for relief. For these reasons, she ordered him removed to Guatemala.

Tobar-Barrera appealed to the Board, asserting that the IJ erroneously applied the IIRIRA-amended definition of aggravated felony; that she also erred in failing to consider his live testimony; and that his due process rights were violated by the near twenty-year delay in the Attorney General's prosecution of his removal proceedings. The Board affirmed the IJ's order and dismissed the appeal.

Tobar-Barrera filed a timely petition for review in this Court. He contends that the Board erred in concluding that IIRIRA's definition of "aggravated felony" applied to him.[3]

---

[3] Tobar Barrera's second contention, that the Board erred in affirming the IJ's decision to exclude testimonial evidence offered to satisfy his burden of proving that his manslaughter conviction was not an "aggravated felony," is no longer at issue. We recently held, in Mondragon v. Holder, 706 F.3d 535 (4th Cir. 2013), that when a statute of conviction is divisible, an alien is limited to presenting Shepard-approved sources to resolve any "ambiguity of his conviction." Id. at 547 (citing Shepard v. United States, 544 U.S. 13 (2005)). In the absence of such documents, the non-citizen is prohibited from relying on "extrinsic evidence about his conduct" to establish that his conviction did not qualify as an aggravated felony. Mondragon, 706 F.3d at 548. As Tobar-Barrera concedes, in light of Mondragon, the exclusion of his testimony is not a ground for relief.

5

We have carefully reviewed the record and fully considered the oral arguments of counsel.

## II.

Because the Board adopted the findings and reasoning of the IJ, we review her decision as supplemented by the Board. Niang v. Gonzales, 492 F.3d 505, 511 n.8 (4th Cir. 2007). The Board's determination that Tobar-Barrera's conviction is an aggravated felony is a legal issue we review de novo. See Mbea v. Gonzales, 482 F.3d 276, 279 (4th Cir. 2004). For reasons that follow, we grant, in part, the petition for review, finding as we do that the Board erroneously applied the IIRIRA-amended definition to the particular facts and circumstances of Tobar-Barrera's case.

## A.

There is no question that the definition of "aggravated felony" changed while Tobar-Barrera's case was pending before the agency. In 1996, Congress, through IIRIRA, amended the definition of "aggravated felony" set forth in the Immigration and Nationality Act ("INA"), 8 U.S.C § 1101 (a)(43)(F) (2013). IIRIRA modified the INA's definition of aggravated felony in a way that would make it more difficult for an alien to obtain relief in future removal proceedings.[4] In enacting the IIRIRA

---

[4] Members of the ABC Settlement class were particularly affected because IIRIRA replaced the process previously available to class members with a more restrictive scheme. Solis (Continued)

amendments, Congress provided that "[t]he amendments made by this section shall apply to <u>actions taken on or after the date of the enactment of this Act</u> [September 30, 1996], regardless of when the conviction occurred." IIRIRA § 321(c) (emphasis added).

Thus, the interpretation of IIRIRA section 321(c) is the source of the present dispute. See <u>Garrido-Morato v. Gonzales</u>, 485 F.3d 319, 323 (5th Cir. 2007) ("'Actions taken,' . . . is not defined anywhere in IIRIRA and it is thus unclear what actions are contemplated by the statute, and who must take them."). The Board, in affirming the IJ's ruling, found that the IJ properly applied the IIRIRA-amended definition of aggravated felony to conclude that Tobar-Barrera's conviction rendered him ineligible for NACARA relief. The Attorney General agrees, of course, relying primarily on Third and Fifth Circuit rulings that the term "actions taken" under section 321(c) refers to the Attorney General's efforts to give effect to that particular section of IIRIRA (i.e., determining the meaning of "aggravated felony" to assess whether an ex-felon is eligible for discretionary relief). <u>Garrido-Morato</u>, 485 F.3d at 324; <u>Biskupski v. Att'y Gen.</u>, 503 F.3d 274, 283 (3d Cir. 2007). In

─────────────────────

<u>v. Holder</u>, 490 F. App'x 744, 746 (6th Cir. 2012) (unpublished). Congress repealed these restrictions through NACARA and returned to class members the less restrictive, pre-IIRIRA conditions for relief. <u>Id.</u>

7

effect, these circuits found that Congress intended that section 321(c) apply retroactively to all adjudications occurring on and after the date of enactment. Garrido-Morato, 485 F.3d at 324; Biskupski, 503 F.3d at 281-283. See also Valderrama-Fonseca v. I.N.S., 116 F.3d 853, 856-57 (9th Cir. 1997); Xiong v. I.N.S., 173 F.3d 601, 607 (7th Cir. 1999); Choeum v. I.N.S., 129 F.3d 29, 36-37 (1st Cir. 1997).

Tobar-Barrera, however, argues for a more narrow interpretation of the term and contends that "actions taken" refers to the point at which the Attorney General began its initial removal proceedings which, in this case, was in April 1990. For support, Tobar-Barrera cites to the Sixth Circuit's decision in Saqr v. Holder, holding that "the term 'action taken' . . . derive[s] from the point at which the removal action begins for purposes of determining whether the pre- or post-IIRIRA definition of aggravated felony applies." 580 F.3d 414, 422 (6th Cir. 2009). Tobar-Barrera has the better argument.

We reject the Attorney General's contention that we should take the approach of the Fifth and Third Circuits in this case. This is because we decline to interpret the statute to say something that Congress chose not to say. There is no question that Congress intended the amended definition of "aggravated felony" to have some retroactive effect, in the sense that the new definition of "aggravated felony" would apply no matter when

8

such convictions become final. But Congress did not say, as it well knows how to say when it chooses, that the amended definition would apply in all proceedings "'pending on or after the date of enactment of the Act.'" Cf., e.g., Mueller v. Angelone, 181 F.3d 557, 566 n.4 (4th Cir. 1999)(discussing § 107(c) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 105, 110 Stat. 1214, 1220); Sanders v. Allison Engine Co., Inc., 703 F.3d 930, 934 (6th Cir. 2012)(discussing § 4(f)(1) of the Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, 123 Stat. 1617, 1625). Rather, Congress limited the retroactive application of the amended definition of "aggravated felony" by saying, instead, that the new definition would apply to "actions taken" on and after the date of enactment. The question posed, then, is what does the limitation enacted by Congress mean?

If we give conclusive effect to post-enactment decisions of an IJ or of the Board as "actions taken" to long-pending removal proceedings, as in this case, then we would be reading out of the statute the very limitation on retroactivity Congress intended. We simply do not believe that is a plausible interpretation of Congress's manifest intention to limit the application of the expanded definition of "aggravated felony" so that the new definition applies to fewer than all proceedings "pending on . . . the date of enactment," Mueller, 181 F.3d at

9

566 n.4, a provision that Congress could have mandated but chose not to mandate. Surely Congress was aware that its failure to do so would be of consequence. Cf. I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987) (affirming, before IIRIRA's 1996 effective date, "the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien").

We find the Sixth Circuit's interpretation to be the better-reasoned approach. It accounts for the statutory and regulatory scheme that governs removal proceedings. Saqr, 580 F.3d at 421-22. And, it makes section 321(c) analysis consistent with the approach that other circuits have used to determine eligibility for other discretionary relief provided by immigration officers. Id. at 422; see also Tran v. Gonzales, 447 F.3d 937, 941 (6th Cir. 2006) ("We need not go through a lengthy statutory analysis to conclude that § 321(c) is not retroactive since the language of the section speaks for itself. Section 321(c) explicitly limits the expanded definition of 'aggravated felony' to prospective deportation proceedings.").

Further, this interpretation aligns with the basic notions of fairness that are implicated when the rules concerning relief are changed in the middle of an alien's ongoing removal proceedings. We have previously explained the importance of this principle to preserving the intended function of NACARA itself, and its attendant provisions for relief. Appiah v. U.S. I.N.S.,

10

202 F.3d 704, 710 (4th Cir. 2000) ("NACARA was intended to correct a provision in the IIRIRA that would have had the effect of 'changing the rules in the middle of the game for thousands of Central Americans and others who came to the United States because their lives and families had been torn apart by war and oppression.'").[5] Those concerns are particularly pointed in this case because it is unlikely that Tobar-Barrera knew his legal rights had changed while his case sat dormant for more than twenty years.

We are persuaded that the post-IIRIRA definition of "aggravated felony" was improperly invoked in the unique circumstances of this case. Tobar-Barrera's deportation proceedings commenced in 1990, upon proper service of an order to show cause that was also filed with the Immigration Court. See Toora v. Holder, 603 F.3d 282, 286 n.3 (5th Cir. 2010) ("Pursuant to 8 U.S.C. § 1229(a)(1), immigration proceedings initiate on the date the alien receives his [Notice to Appear].") (citations omitted). Since that time, the record indicates that Tobar-Barrera has been subject to a single,

_____

[5] See also Saqr, 580 F.3d at 422 (quoting Alanis-Bustamante v. Reno, 201 F.3d 1303, 1310 (11th Cir. 2000) ("Considerations of fairness convince us that for purposes of deciding which law applies, the removal proceedings in this case should be viewed as commencing at least on that date . . . when the show cause order had been served and the warrant of detainer lodged.")).

ongoing, deportation proceeding. Tobar-Barrera's case number has remained the same; so has the underlying controversy regarding his removability and the dispute regarding his eligibility for special relief. Although the Immigration Court administratively closed this proceeding in 1991, the closure carried no legal effect. See Matter of Amico, 19 I&N Dec. 652, 654 n.1 (BIA 1988) ("The administrative closure of a case does not result in a final order. It is merely an administrative convenience that allows the removal of cases from the calendar in appropriate situations.")). Thus, no triggering "action" was "taken" under these circumstances after the statutory amendment. Instead, the Attorney General's motion to recalendar merely terminated a hiatus in proceedings already underway. Because the relevant "action taken" against Tobar-Barrera occurred in 1990, the pre-IIRIRA definition must apply.

B.

Tobar-Barrera also contends that review "of his NACARA application in the Immigration Court should have been conducted under the same eligibility rules that were employed by USCIS." Pet. Br. at 20. To that end, Tobar-Barrera claims that the "divergent NACARA eligibility rules in USCIS and the Immigration Court" violate due process. Id. at 20-21.

Under 8 U.S.C. § 1252(d)(1), this Court may review a final order of removal only if "the alien has exhausted all

12

administrative remedies available to the alien as of right." Any particular claim that is not properly exhausted is barred from review by this Court. See Massis v. Mukasey, 549 F.3d 631, 638 (4th Cir. 2008). This prohibition against reviewing unexhausted claims is jurisdictional. Id.

The record clearly establishes that Tobar-Barrera did not present this particular argument to the Board.[6] Although we have recognized an exception to the exhaustion requirement for certain constitutional claims, see Farrokhi v. U.S. I.N.S., 900 F.2d 697, 700-01 (4th Cir. 1990); Gallanosa v. United States, 785 F.2d 116, 120-21 (4th Cir. 1986), Tobar-Barrera's due process challenge to the allegedly disparate standards does not fall within the narrow confines of this exception. Therefore, the exception to the general exhaustion rule is inapplicable in this instance. See Kurfees v. I.N.S., 275 F.3d 332, 337 (4th Cir. 2001). Because the exhaustion requirement is not excused and the issue has not been administratively exhausted, we lack jurisdiction to consider this particular argument.

---

[6] Tobar-Barrera, however, did raise a different due process claim below. That claim related to the more than twenty-year delay in prosecuting his removal. J.A. 33-35. Nonetheless, Tobar-Barrera has declined to raise that issue before this Court on appeal. See generally Pet. Br. at i, 18-21.

III.

For the foregoing reasons, we grant in part and deny in part the petition for review. Specifically, we vacate the Board's order and instruct the Board to return this case to the IJ for de novo NACARA proceedings that apply the pre-IIRIRA definition of aggravated felony. We deny as moot the pending motion to remand this case to the Board.[7]

PETITION GRANTED IN PART
AND DENIED IN PART

---

[7] While the petition for review was pending, the Attorney General filed a motion to remand this case to the Board for reconsideration in light of Salem v. Holder, 647 F.3d 111 (4th Cir. 2011), cert. denied, 132 S. Ct. 1000 (2012), and to correct a defect in the Certified Administrative Record. The Court deferred action on the motion, which, in view of our decision on the merits, is denied as moot.

14

BARBARA MILANO KEENAN, Circuit Judge, dissenting:

I disagree with the majority's interpretation of IIRIRA § 321(c). Therefore, I respectfully dissent from Section II(A).

The provisions in IIRIRA § 321(b) make clear that the revised definition of the term "aggravated felony" applies "regardless of whether the conviction was entered before, on, or after" IIRIRA's enactment. See Mondragón v. Holder, 706 F.3d 535, 542-43 (4th Cir. 2013). In IIRIRA § 321(c), the statute provides:

> EFFECTIVE DATE. – The amendments made by this section shall apply to actions taken on or after the date of the enactment of this Act [September 30, 1996], regardless of when the conviction occurred.

(emphasis added).

The majority acknowledges that the term "actions taken" is not defined and is ambiguous. Yet, the majority "eschew[s] critical analysis of the meaning of the phrase 'actions taken,' instead substituting in its place the phrase 'proceedings initiated.'" Biskupski v. Att'y Gen., 503 F.3d 274, 283 (3d Cir. 2007) (discussing the analysis in Tran v. Gonzales, 447 F.3d 937 (6th Cir. 2006)).

In my view, the majority of circuit courts to consider the meaning of "actions taken" have properly concluded that the term refers to actions and decisions by the Attorney General acting through an IJ or BIA. See generally, Garrido-Morato v.

15

Gonzales, 485 F.3d 319, 324 (5th Cir. 2007); Biskupski, 503 F.3d at 283; Xiong v. I.N.S., 173 F.3d 601, 607 (7th Cir. 1999); Choeum v. I.N.S., 129 F.3d 29, 36-37 (1st Cir. 1997); Valderrama-Fonseca v. I.N.S., 116 F.3d 853, 856-57 (9th Cir. 1997).

I am persuaded by the analysis employed by the Fifth Circuit in Garrido-Morato. See 485 F.3d at 324. There, the court observed that because IIRIRA § 321(c) is "an effective date provision for § 321," the term "'actions taken' must refer" to actions "taken under the statute, such as determining the meaning of 'aggravated felony' and thus the availability of discretionary hardship relief to such felons." Id.

In the present case, the IJ and BIA applied the INA's definition for "aggravated felony" in the petitioner's case in 2010 and 2011, after IIRIRA's effective date. Therefore, I would affirm the decision that the petitioner is ineligible for relief under NACARA because he was convicted of a disqualifying aggravated felony and would deny the petition for review in this case.