**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JAD GEORGE SALEM,

*Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney
General,

*Respondent.*

No. 10-1078

On Petition for Review of an Order of
the Board of Immigration Appeals.

Argued: March 23, 2011

Decided: May 24, 2011

Before TRAXLER, Chief Judge, and KING and DIAZ,
Circuit Judges.

---

Affirmed by published opinion. Judge Diaz wrote the opinion,
in which Chief Judge Traxler and Judge King joined.

---

## COUNSEL

**ARGUED:** Simon Yehuda Sandoval-Moshenberg, LICHT-
MAN & ELLIOT, PC, Washington, D.C., for Petitioner. Dan-
iel I. Smulow, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:**
Thomas A. Elliot, Fabienne Chatain, Thomas H. Tousley,

ELLIOT & MAYOCK, Washington, D.C., for Petitioner.
Tony West, Assistant Attorney General, Civil Division, Mark
C. Walters, Senior Litigation Counsel, Office of Immigration
Litigation, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Respondent.

---

## OPINION

DIAZ, Circuit Judge:

This appeal arises from entry of an order of removal under
section 237(a)(2)(A)(ii) of the Immigration and Nationality
Act ("INA"). The Board of Immigration Appeals ("BIA")
found petitioner removable and ineligible for cancellation of
removal. Petitioner concedes removability but contests the eli-
gibility ruling. Because petitioner has not satisfied his statu-
torily prescribed burden of demonstrating eligibility, we
affirm.

### I.

### A.

Petitioner Jad George Salem is a lawful permanent resident
of the United States. Leaving territory then belonging to Jor-
dan, Salem legally entered this country in 1966. The land
from which he emigrated is now controlled by Israel and the
Palestinian Authority, and Salem asserts that he is stateless as
a result of this transfer of sovereignty.

Salem has amassed a substantial criminal record while in
the United States. Central to this appeal is Salem's 2007 fel-
ony conviction for petit larceny (third subsequent) under Va.
Code Ann. § 18.2-96.[1] Following entry of a guilty plea pursu-

---

[1]The statute provides that "[a]ny person who (1) Commits larceny from
the person of another of money or other thing of value of less than $5, or
(2) Commits simple larceny not from the person of another of goods and
chattels of the value of less than $200 . . . shall be deemed guilty of petit
larceny." Va. Code Ann. § 18.2-96.

ant to *North Carolina v. Alford*, 400 U.S. 25 (1970)[2], Salem's sentence was enhanced in accordance with Va. Code Ann. § 18.2-104, which punishes a third or subsequent larceny offense as a felony.

B.

On January 3, 2008, the U.S. Department of Homeland Security filed a Notice to Appear, initiating removal proceedings against Salem. The government alleged that Salem was removable under two separate statutory provisions: 8 U.S.C. § 1227(a)(2)(A)(ii), for having been convicted of two or more crimes involving moral turpitude; and 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of an aggravated felony under 8 U.S.C. § 1101(a)(43)(G), specifically "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year."

At a hearing before the immigration judge ("IJ"), Salem conceded that he was removable for having been convicted of two or more crimes involving moral turpitude. However, he challenged the government's contention that an aggravated-felony conviction justified his removal, and the IJ agreed.

The IJ concluded that the Virginia larceny statute under which Salem was convicted was divisible, in that it criminalized both wrongful and fraudulent takings of property, with the latter offense not constituting an "aggravated felony" under the INA. The IJ looked to our decision in *Soliman v. Gonzales*, 419 F.3d 276 (4th Cir. 2005), to support this determination. There, we held that "theft" for purposes of the INA does not include fraud, because fraud lacks the "without consent" element of the taking that is essential to a finding of

---

[2]The prosecutor's proffer of the facts in support of the plea reflected that Salem pulled into a gas station, pumped $23.01 worth of gasoline into his car, and then drove away without paying for it.

theft. *Id.* at 282–83. Drawing on this holding and looking to the divisible nature of the statute, the IJ reasoned that production of some evidence was necessary to ascertain whether Salem had been convicted of theft or merely fraud. According to the IJ, the government's proffer of the record of conviction "establish[ed] the bare fact of conviction" but failed to reveal whether the conviction was for fraud or theft. J.A. 20. As a result, the IJ determined that the government had failed to meet its burden of demonstrating by clear and convincing evidence that Salem had been convicted of an aggravated felony.

Although Salem conceded removability for having been convicted of two or more crimes involving moral turpitude, he sought relief in the form of cancellation of removal. The IJ denied relief, ruling that Salem had failed to carry his burden of showing by a preponderance of the evidence that he had not been convicted of an aggravated felony.

Salem appealed the IJ's ineligibility ruling to the BIA, which affirmed. Like the IJ, the BIA determined that Salem had not satisfied his burden of showing that he was eligible for cancellation of removal. Salem presented no evidence to establish that his larceny conviction was for conduct falling outside the scope of the INA's definition of an "aggravated felony." As the BIA concluded, "any lingering uncertainty that remains after consideration of the conviction record necessarily inures to the detriment of the party who bears the burden of proof." J.A. 7. Salem now appeals the BIA's decision.[3]

## II.

The INA employs a burden-shifting scheme in removal proceedings. The government must establish removability in the first instance. 8 U.S.C. § 1229a(c)(3)(A). It sustains its

---

[3]We have jurisdiction to hear appeals from BIA decisions that, as here, present "constitutional claims or questions of law." *See* 8 U.S.C. § 1252(a)(2)(D).

burden by presenting "clear and convincing evidence that, in the case of an alien who has been admitted to the United States, the alien is deportable."[4] *Id.*

But a removability finding does not end the matter. The INA offers noncitizens several forms of relief to resist actual removal, including cancellation of removal. A noncitizen is eligible for cancellation of removal if he "(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) *has not been convicted of any aggravated felony.*" *Id.* § 1229b(a) (emphasis added). Even if a noncitizen demonstrates eligibility, the Attorney General retains discretion to deny relief. *Id.*

Important for purposes of this appeal, at the relief stage the noncitizen bears the burden of establishing eligibility. 8 C.F.R. § 1240.8(d). Thus "[i]f the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply." *Id.*

Congress in the REAL ID Act of 2005 affirmed the vitality of this burden-shifting framework. Pub. L. No. 109-13, 119 Stat. 231. In particular, it sought to underscore that the noncitizen bears the burden at the relief stage. H.R. Rep. 109-72, at 294 (2005) (Conf. Rep.). Congress appended provisions to the INA to accomplish this objective. Of great relevance here, a new statutory section provided that "[a]n alien applying for relief or protection from removal has the burden of proof to establish that the alien [ ] satisfies the applicable eligibility requirements." 8 U.S.C. § 1229a(c)(4)(A).

---

[4]The government met its burden in this case when Salem acknowledged before the IJ that he was removable based on having been convicted of two or more crimes involving moral turpitude.

### III.

We review legal questions de novo. *Mbea v. Gonzales*, 482 F.3d 276, 279 (4th Cir. 2007). Although we ordinarily accord deference to the BIA's interpretation of INA provisions, such deference is unwarranted where, as here, the text is unambiguous. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999).

In this case, Salem's 2007 Virginia state record of conviction for petit larceny encompasses the elements of an offense that may qualify as an aggravated felony. Salem nevertheless contends that a noncitizen satisfies his burden of proof to demonstrate that he has not been convicted of an aggravated felony by presenting an inconclusive, though complete, record of conviction.

We find, however, that the BIA's ruling denying Salem's request for relief from removal was faithful to the plain meaning of the statutory text governing eligibility for cancellation of removal. Salem's arguments to the contrary ignore Congress's burden-shifting framework. Accordingly, we affirm.

### A.

Salem's arguments suffer from a debilitating flaw: all gloss over the relevant statutory provisions. Yet we cannot so easily avoid the pellucid dictates of Congress, and application of its mandate convinces us that Salem has not carried his burden of demonstrating eligibility for discretionary relief.

Elementary principles of statutory construction command a court to enforce the unambiguous terms of a duly enacted statute. As we recently wrote, our "inquiry [begins and] ends with the plain language . . . unless the language is ambiguous." *Markovski v. Gonzales*, 486 F.3d 108, 110 (4th Cir. 2007). After concluding that Congress has clearly expressed its will on the face of a statutory provision, courts must not superimpose outside constructs on the clear text. *Conn. Nat'l Bank v.*

*Germain*, 503 U.S. 249, 253–54 (1992). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Id.* (citations and internal quotations omitted).

Applying these principles to interpretation of the INA's relief provisions, the Tenth Circuit has held that presentation of an inconclusive record of conviction is insufficient to satisfy a noncitizen's burden of proof to show eligibility for cancellation of removal. *Garcia v. Holder*, 584 F.3d 1288, 1289–90 (10th Cir. 2009). In *Garcia*, the petitioner had pleaded guilty to assault and conceded removability. *Id.* at 1289. The petitioner and the government agreed that the record of conviction was inconclusive as to whether the petitioner had been convicted of a crime involving moral turpitude, which would bar him from seeking discretionary relief. *Id.* The parties disputed, however, which "side [may] claim[ ] the benefit of the record's ambiguity." *Id.*

The court held that, once the government had demonstrated that the petitioner was removable, the INA shifted the burden "to him to prove the absence of any impediment to discretionary relief." *Id.* at 1290. Accepting the petitioner's argument that he had sustained his burden by submitting an inconclusive record of conviction would, the Tenth Circuit declared, "effectively nullif[y] the statutorily prescribed burden of proof." *Id.* The court acknowledged that the petitioner was "not to blame for the ambiguity surrounding his criminal conviction," but reasoned that lack of culpability "does not relieve him of his obligation to prove eligibility for discretionary relief." *Id.*

Not all circuits have been persuaded by the logic underpinning *Garcia*. Both the Second and Ninth Circuits have held that a noncitizen satisfies his burden of proving that he has not been convicted of an aggravated felony—and thus

remains eligible for cancellation of removal—simply by proffering an inconclusive record of conviction. *Martinez v. Mukasey*, 551 F.3d 113, 122 (2d Cir. 2008); *Sandoval-Lua v. Gonzales*, 499 F.3d 1121, 1130 (9th Cir. 2007), *authority affirmed in Rosas-Castaneda v. Holder*, 630 F.3d 881, 888 (9th Cir. 2011) (ruling that enactment of REAL ID Act does not affect the holding of *Sandoval-Lua*).

We conclude that the Tenth Circuit's approach hews more closely to the relevant statutory text. In removal proceedings under the INA, Congress has commanded that the government sustain the burden of establishing removability by clear and convincing evidence. 8 U.S.C. § 1229a(c)(3)(A). But at the relief stage, the clear text of the statute shifts the burden to the removable noncitizen to establish that he "satisfies the applicable eligibility requirements." *Id.* § 1229a(c)(4)(A)(i).

To satisfy his burden, an applicant for cancellation of removal must, among other things, demonstrate by a preponderance of the evidence that he "has not been convicted of any aggravated felony," *id.* § 1229b(a)(3). " 'The burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence.' " *United States v. Manigan*, 592 F.3d 621, 631 (4th Cir. 2010) (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993)). Presentation of an inconclusive record of conviction is insufficient to meet a noncitizen's burden of demonstrating eligibility, because it fails to establish that it is more likely than not that he was not convicted of an aggravated felony. In such a case, fidelity to the INA requires that the noncitizen, as the party bearing the burden of proof, suffer the detriment.

Applying this reasoning here, we conclude that Salem has failed to satisfy his burden of proof to demonstrate that he is eligible for cancellation of removal. The government unquestionably met its burden of establishing by clear and convinc-

ing evidence that Salem was removable for having been convicted of two or more crimes involving moral turpitude, and indeed Salem conceded the point. The burden then shifted to Salem to demonstrate eligibility for cancellation of removal by showing, among other things, that he had not been convicted of an aggravated felony. *See* 8 U.S.C. § 1229a(c)(4)(A)(i).

Salem also concedes that the only evidence he submitted to the IJ to meet his burden—the 2007 Virginia record of conviction for petit larceny—is inconclusive as to whether he was convicted of an aggravated felony. Thus viewing the totality of evidence proffered by Salem to sustain his burden, it is equally likely that he was convicted of an aggravated felony as it is that he was not. Because Salem failed to meet his burden to show eligibility for discretionary relief, he is not entitled to cancellation of removal.

## B.

To resist the plain import of the statutory text, Salem contends that the Supreme Court's decision in *Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577 (2010), controls this case and compels reversal of the BIA's decision. But Salem misapprehends the nature of the Court's holding.

The petitioner in *Carachuri-Rosendo* had in two separate instances pleaded guilty in Texas to misdemeanor drug possession. *Id.* at 2583. The prosecutor could have charged the petitioner with a felony in the second case but elected against it. *Id.* at 2581–83. The government initiated removal proceedings based on the petitioner's violation of a controlled-substance law. *Id.* at 2583. The petitioner conceded removability but sought cancellation of removal. *Id.* In response, the government contended that, because the petitioner could have been prosecuted for a felony—even though he was not —he had been convicted of an aggravated felony under the INA

and was thus barred from receiving discretionary relief. *Id.* at 2582.

Castigating the government's "hypothetical approach" as "ignor[ing] both the conviction . . . and the conduct actually punished by the state offense," the Court held that "[t]he mere possibility that the defendant's conduct, coupled with facts outside of the record of conviction, could have authorized a felony conviction under federal law is insufficient." *Id.* at 2588–89. The Court underscored the infirmity of the government's argument in that "it focuses on facts known to the immigration court that could have *but did not* serve as the basis for the state conviction and punishment." *Id.* at 2588.

Read properly, *Carachuri-Rosendo* offers Salem no refuge. The government here is not speaking in hypotheticals, and both parties agree that Salem may actually have been "*convicted*" of an aggravated felony. On this record, the clear statutory mandate placed the burden on Salem to prove his eligibility for discretionary relief from removal by showing that it was more probable than not that his larceny conviction was not an aggravated felony. *Carachuri-Rosendo* does not hold otherwise.

## C.

Salem contends further that "the [BIA] impermissibly imposed a level of the burden of proof upon [him] higher than a preponderance of the evidence by requiring the petitioner to produce evidence outside the record of conviction in contravention of the modified categorical approach." Pet'r's Br. 15. We disagree.

The Supreme Court has adopted the categorical approach in the criminal-sentencing context to maintain fidelity to congressional intent, safeguard defendants' Sixth Amendment rights, and minimize a range of practical concerns. *E.g.*, *Taylor v. United States*, 495 U.S. 575, 600–01 (1990); *see also*

*United States v. Alston*, 611 F.3d 219, 225 (4th Cir. 2010) (enumerating twin aims of categorical approach as avoiding collateral trials and protecting defendants' Sixth Amendment rights).

The categorical approach "generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense" when determining whether a prior conviction may be used to enhance a defendant's sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). *Taylor*, 495 U.S. at 602. Thus *Taylor* teaches that a conviction under a state statute constitutes a conviction for purposes of enhancement "if either its statutory definition substantially corresponds to [the] 'generic' [crime], or the charging paper and jury instructions actually required the jury to find all the elements of [the] generic [crime] in order to convict the defendant." *Id.*

Where the relevant conviction submitted by the government to enhance a defendant's sentence is the result of a guilty plea under a divisible state statute, the trial court "is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005). The inquiry centers on "whether the plea had 'necessarily' rested on the fact identifying the [crime] as generic." *Id.* at 21. Review of the record is restricted even further when ascertaining the nature of a conviction secured by *Alford* plea. *Alston*, 611 F.3d at 226 ("[A] prosecutor's proffer of the factual basis for an *Alford* plea does not satisfy the requirements of the modified categorical approach.").

Two circuits have employed the categorical approach to hold that presentation of an inconclusive record of conviction satisfies a noncitizen's burden to demonstrate that he has not been convicted of an aggravated felony. *Martinez*, 551 F.3d at 118–22; *Sandoval-Lua*, 499 F.3d at 1129–32. The Ninth

Circuit in *Sandoval-Lua* assumed that the categorical approach should be used in the relief-from-removal context, confining discussion of its reasoning to a footnote, 499 F.3d at 1130 n.9. According to the Ninth Circuit, similarities between the language used in the ACCA and the INA—specifically, the requirement that a noncitizen have been "convicted" of an aggravated felony, rather than adjudged to have just "committed" such a crime—justified extension of the categorical approach to relief-from-removal proceedings. *Id.*

The Second Circuit in *Martinez* devoted significantly more time to explaining the propriety of using the categorical approach at the relief stage. Like the Ninth Circuit in *Sandoval-Lua*, 499 F.3d at 1130 n.9, the Second Circuit emphasized the use of the word "conviction" in the INA, *Martinez*, 551 F.3d at 118 n.3. The bulk of the Second Circuit's reasoning focused on practical difficulties presented by failure to confine the relief inquiry in accordance with strictures of the categorical approach.

Positing that demanding more of the noncitizen "necessarily requires looking into evidence of [the noncitizen's] actual conduct," the Second Circuit concluded that "[i]t was the desire to avoid such particular inquiries—whether designed to show that a specific defendant was less or more culpable than what his actual conviction required—that led us and the Supreme Court to focus on categorical analysis." *Id.* at 121. The court also expressed concern that " 'the BIA and reviewing courts are ill-suited to readjudicate the basis of prior criminal convictions.' " *Id.* at 122 (quoting *Dulal-Whiteway v. DHS*, 501 F.3d 116, 132 (2d Cir. 2007)).

With respect for our colleagues on the Second and Ninth Circuits, we believe that *Martinez* and *Sandoval-Lua* elide the clear statutory language of the INA establishing the noncitizen's burden in relief-from-removal proceedings. Moreover, we are reluctant to extend application of the categorical

approach to the immigration relief context given the uniqueness of the INA's burden-shifting regime. It bears repeating that Salem was not in the dock facing criminal sanctions, but instead sought the government's largesse to avoid removal. And while we have held that the categorical approach governs the inquiry when determining removability in the first instance, *Soliman*, 419 F.3d at 284, we have never considered whether the evidentiary limits imposed by that approach should apply when the burden shifts to the noncitizen to prove his eligibility for cancellation of removal. As to that question, we note that the Supreme Court has expressed some reservation about a wholesale adoption of the categorical approach in the immigration context. *See Nijhawan v. Holder*, 129 S. Ct. 2294, 2303 (2009) (stating that the *Taylor-Shepard* line of cases "developed [the evidentiary] list for a very different purpose, namely that of determining [in the sentencing context] which statutory phrase (contained within a statutory provision that covers several different generic crimes) covered a prior conviction," and finding "nothing in prior law that so limits the immigration court").[5]

In any event, Salem made no attempt to offer additional evidence to the IJ beyond the record of conviction. Thus we need not address today the proper scope and limit—if any—of a noncitizen's evidentiary presentation when seeking relief from removal.

---

[5]The Court in *Carachuri-Rosendo* stated that *Nijhawan* was limited to "consider[ing] how to calculate the amount of loss once a conviction for a particular category of aggravated felony has occurred." 130 S. Ct. at 2587 n.11. We also acknowledge that the majority in *Carachuri-Rosendo* looked to the "record of conviction" to determine of which offense the petitioner had actually been convicted, thereby rejecting the government's contention that the petitioner was ineligible for cancellation of removal because he could have been charged with a federal felony for his prior criminal conduct. *Id.* at 2587 n.12. That said, neither *Carachuri-Rosendo* nor *Nijhawan* had cause to discuss the import of burden shifting at the relief stage, a factor critical to our doubts about the applicability of the categorical approach in this context.

We are satisfied that the BIA correctly applied the burden-shifting standard imposed by Congress when a petitioner seeks cancellation of removal, and that it did so in a manner consistent with the dictates of *Taylor* and *Shepard*. And like the BIA, we are not free to ignore the results of that clear legislative mandate. The evidence before the BIA showed that Salem had been convicted of an offense—petit larceny (third subsequent)—that on its face satisfied the requirements of an "aggravated felony" as defined by the INA. To the extent Salem contended that he was convicted of an offense that was not an aggravated felony because of the divisible nature of Virginia's petit larceny statute, the BIA did no more than place the burden on him to produce "evidence encompassed within the 'record of conviction'—such as a charging instrument, a plea agreement, or a plea colloquy transcript—which demonstrates that he pled guilty to, and was convicted of, an offense falling *outside* the scope of the aggravated felony definition." J.A. 7 (emphasis added).

It is true enough that the relevant record failed to resolve the ambiguity surrounding Salem's conviction for petit larceny. For reasons we have explained, however, we decline to accept Salem's view that this ambiguity should be resolved in his favor. Instead, we hold that where, as here, the relevant evidence of conviction is in equipoise, a petitioner has not satisfied his statutory burden to prove eligibility for relief from removal.[6]

---

[6]This uncontroversial principle finds support in our decision in *United States v. Haught*, 387 Fed. App'x 327, 329 (4th Cir. 2010). The district court in *Haught* determined that the defendant was not entitled to a sentencing adjustment for acceptance of responsibility, in part because results of a drug test indicated that he may have used marijuana even after entering a guilty plea. *Id.* at 328. Similar to Salem's argument here, the defendant contended "that the district court erred because the evidence established that [his] marijuana use could have just as easily occurred before the entry of his plea agreement as it could have after it," *id.* Given that the defendant bears the burden of showing by a preponderance "that he is entitled to an offense level adjustment for acceptance of responsibility," we concluded that Haught failed to sustain his burden because "the evidence was in equipoise regarding the timing of his drug use." *Id.* at 328–29.

### D.

Salem argues finally that the BIA impermissibly relied on the factual basis for his *Alford* plea in reaching its ruling. The record demonstrates, however, that the BIA did not use these facts to support its conclusion. It merely noted the obvious, i.e., that the only evidence in the record bearing on the particulars of Salem's 2007 conviction for petit larceny was not helpful to him.

The BIA acknowledged Salem's contention that review of the colloquy is impermissible because he entered an *Alford* plea. It concluded, however, that the issue was irrelevant, because "the fact remains that the respondent has produced no evidence to establish that his violation . . . involved an element of Virginia larceny falling outside the theft aggravated felony definition." J.A. 7.

We agree with the BIA that, *Alford* plea or not, Salem did not sustain his burden of showing by a preponderance of the evidence that he has not been convicted of an aggravated felony. Accordingly, we affirm the BIA's ruling that Salem is ineligible for cancellation of removal.

*AFFIRMED*