**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1360**

MOKORYA COSMAS WAMBURA,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: September 11, 2020                    Decided: November 13, 2020

Before HARRIS, RICHARDSON, and QUATTLEBAUM, Circuit Judges.

Petition for review granted in part, denied in part and remanded by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Richardson joined. Judge Harris wrote a concurring opinion.

**ARGUED:** Jeffrey A. Clair, LAW OFFICES OF JEFFREY CLAIR, Washington, D.C., for Petitioner. Gregory A. Pennington, Jr., UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Joseph H. Hunt, Assistant Attorney General, Carl McIntyre, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

QUATTLEBAUM, Circuit Judge:

In this appeal, we are presented with two questions related to aliens seeking protection under the United States immigration laws. First, once the requirements for removability are met, does the government have the burden to prove that the amount of loss caused by the alien's fraud conviction is $10,000 or more for purposes of an alien's eligibility for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and for protection under the Convention Against Torture ("CAT")? Second, does 8 U.S.C. § 1229a(c)(4)(B) require an immigration judge ("IJ") to: (1) provide an alien with advanced notice of the need to offer corroborating evidence, and (2) make a finding as to whether such corroborating evidence was reasonably available if the needed corroborating evidence was not provided?

As to the first question, we conclude the burden of proof lies not with the government, but with the alien seeking relief from removal. As to the second, we conclude that advanced notice is not required, but that the IJ must make a finding on the availability of corroborating evidence as described below. Therefore, for the following reasons, we grant in part and deny in part the petition for review, and remand for further proceedings consistent with this opinion.

I.

Mokorya Cosmas Wambura ("Wambura") is a native and citizen of Tanzania. He was admitted lawfully to the United States on a student visa and later became a lawful permanent resident in 2005. Approximately eight years later, Wambura was charged with

2

various crimes related to a conspiracy to fraudulently secure a residential mortgage loan and obtain federally subsidized rent using a stolen identity. Under this scheme, Wambura secured a mortgage in the amount of $375,000, and collected $29,186 in rent. Wambura ultimately pled guilty to conspiracy to commit wire fraud, aggravated identity theft and conspiracy to commit wire and mail fraud. He was sentenced to 60 months in prison and ordered to pay $434,867.65 in restitution.

Under the INA, a lawful permanent resident can be removed if convicted of certain crimes. 8 U.S.C. § 1227(a)(2). After Wambura completed his sentence, the Department of Homeland Security ("DHS") commenced removal proceedings against him based on his prior convictions. More specifically, the DHS charged that Wambura should be removed for two independent reasons: (1) he had been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct and (2) he had been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(M) relating to an offense that involves fraud or deceit in which the loss to the victims exceeds $10,000. A.R. 427–29.[1]

Wambura, in turn, applied for asylum and withholding of removal under the INA and for protection under CAT. In seeking this relief, he claimed that he would be tortured if he returned to Tanzania because of his membership and role in Chadema, an opposition political party in that country. Wambura also applied for cancellation of removal.

---

[1] The DHS filed an additional charge based on Wambura having been convicted of conspiracy to commit fraud as defined in 8 U.S.C. § 1101(a)(43)(U). A.R. 409.

Wambura appeared at the removal hearing pro se although the IJ continued the hearing date several times to allow Wambura the opportunity to obtain counsel. The IJ concluded that Wambura was removable based on his aggravated felony and crime involving moral turpitude convictions and, because of those same convictions, he was ineligible for cancellation of removal or asylum.

At a subsequent hearing to consider Wambura's application for withholding of removal and protection under CAT, the IJ determined that, due to the length of his sentence under these convictions, Wambura was also ineligible for withholding of removal under either CAT or the INA. Thus, the only relief he could pursue was a deferral of removal under CAT.

Pursuing such relief, Wambura testified that, while in the United States, he participated in activities involving Chadema. He explained his activities included serving as a leader in Chadema USA, organizing and participating in a demonstration protesting election results in Tanzania and writing letters to the United Nations and a blog about human rights violations in Tanzania. He testified that he believed that if returned to Tanzania, he would be tortured because of his relationship with Chadema. At the hearing, he acknowledged that his participation ended over five years ago when his prison sentence began. But Wambura claimed that his father recently told him he is being followed by the secret police in Tanzania.

The issue of corroborating evidence arose at the hearing. The IJ asked Wambura if he had evidence corroborating his testimony. He claimed he was unable to provide it since he was unable to access his email account.

4

Orally and in a written order, the IJ denied all claims. She went through the evidence presented by Wambura and other materials he submitted in support of his claims that he would be tortured if he returned to Tanzania. The IJ noted that it was Wambura's burden to prove that he is eligible for deferral of removal under CAT, but ultimately she concluded that his position was "totally and completely based on speculation." J.A. 14. She stated that Wambura has made "absolutely no showing that these past affiliations, which are now half a decade old, could cause the respondent any problems if he is returned to his home country." J.A. 15. She gave Wambura a "mixed credibility finding" and determined that Wambura had not set forth any credible reasons to support his contention that, if he is returned, he will be harmed and tortured. The IJ also addressed Wambura's failure to produce corroborating evidence. She noted that while Wambura indicated that his father told him he was being followed by the secret police, there was no letter from the father or information to corroborate Wambura's contentions. She noted that no local Chadema members testified or offered statements, letters or affidavits in support of Wambura's contentions.

Wambura appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). The BIA affirmed and dismissed Wambura's appeal, finding Wambura removable and ineligible for asylum or withholding of removal. The BIA affirmed the IJ's determination on removability based on Wambura's conviction for an aggravated felony and concluded there was sufficient evidence of loss to the victims of over $10,000. It further noted the IJ's finding that Wambura was also removable for having been convicted of two crimes of moral turpitude not arising out of a single scheme of criminal conduct but explained that

5

Wambura waived any challenge to that determination by failing to appeal it. The BIA then determined that the IJ did not make an explicit credibility finding and thus assumed Wambura's credibility for purposes of his appeal. Even assuming credibility, the BIA affirmed the IJ's denial of Wambura's application for deferral of removal under CAT because Wambura failed to meet his burden that it was more likely than not he would be tortured upon return to Tanzania.

After the BIA dismissed his appeal, Wambura timely petitioned for judicial review of the BIA's decision. We have jurisdiction to review final orders of the BIA pursuant to 8 U.S.C. §§ 1252(a)(1) and (a)(2)(D). *See Huaman-Cornelio v. Bd. of Immigration Appeals*, 979 F.2d 995, 999 (4th Cir. 1992) (final orders in deportation proceedings come from the BIA, the highest administrative tribunal, and, thus, the court of appeals reviews the findings and order of the BIA); *see also Nasrallah v. Barr*, 140 S. Ct. 1683, 1688 (2020) (confirming our jurisdiction to consider legal and factual challenges to the denial of relief under CAT).[2]

---

[2] We have recognized that situations may arise when it is appropriate for this Court to review an IJ's opinion, such as when the BIA adopts the IJ's decision without an opinion of its own or when the BIA adopts the IJ's opinion and supplements it with additional reasoning. In such cases, the BIA has determined that the IJ's opinion will become—in whole or in part—the final order of removal subject to review. *Martinez v. Holder*, 740 F.3d 902, 908 (4th Cir. 2014). Here, the BIA issued its own detailed opinion affirming the IJ with further reasoning of its own but without expressly adopting the IJ's opinion. Thus, we focus our review on the BIA's decision.

II.

We first address Wambura's argument that the government bore the burden of establishing the amount of the loss to the victims of the "aggravated felony" that the IJ determined barred Wambura's claims for relief from removal under the INA and CAT.[3] He argues the amount of the restitution order established by the plea agreement failed to satisfy this burden. In support of this argument, he relies on *Nijhawan v. Holder*, where, in reviewing a determination by the BIA that the petitioner committed an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(M)(i) and thus was removable, the Supreme Court held that the government has the burden to show the amount of loss by clear and convincing evidence. *Nijhawan v. Holder*, 557 U.S. 29, 42 (2009).

Wambura's reliance on *Nijhawan* is misplaced. He is right that the government has the burden of establishing by clear and convincing evidence that an alien is removable in the first place, including the amount of loss involved in an aggravating felony that serves as the basis for the removal. 8 U.S.C. § 1229a(c)(3)(A). But while that was the issue in *Nijhawan*, it is not the issue here.

---

[3] Our standard of review is well-settled. We review legal questions raised in petitions for review de novo. *De Leon v. Holder*, 761 F.3d 336, 339 (4th Cir. 2014). In contrast, we review factual findings under the substantial evidence standard, meaning "we are obliged to treat them as conclusive unless the evidence before the BIA was such that any reasonable adjudicator would have been compelled to conclude to the contrary." *Haoua v. Gonzales*, 472 F.3d 227, 231 (4th Cir. 2007).

7

Here, the DHS charged that Wambura was removable because he had been convicted of two crimes involving moral turpitude, and an "aggravated felony" which includes "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000."[4] A.R. 429. Wambura seeks a "[r]eversal of the 'aggravated felony' holding" but concedes that doing so "would not vitiate the IJ's additional holding that Wambura is removable because he had pleaded guilty to two separate crimes of moral turpitude." Appellant's Brief at 40 n.7. This concession about removability based on two separate crimes of moral turpitude is critical. The government can skin the eligibility cat here in two ways. It can meet its burden by showing either the aggravated felony (which is contested)[5] or the two crimes involving moral turpitude (which are not contested). Since "Wambura does not contest that his conviction for two separate crimes of moral turpitude renders him removable," Reply Br. at 2, the government carried its burden of establishing removability independent of any conviction for an aggravated felony.

Of course, Wambura can still apply for relief or protection from removal. But to obtain that relief, he—not the government—has the burden to prove that he satisfies the applicable eligibility requirements. 8 U.S.C. § 1229a(c)(4)(A); *see Salem v. Holder*, 647

---

[4] The DHS also charged that Wambura was removable because of his conviction for a conspiracy to commit such an offense as set forth in 8 U.S.C. §§ 1101(a)(43)(M)(i) and (a)(43)(U).

[5] As the government notes, Wambura does not, however, contend that the conviction lacks an element of fraud or deceit.

F.3d 111, 114–15 (4th Cir. 2011).[6] One of those eligibility requirements is that Wambura has not been convicted of an aggravated felony. An alien who has committed an "aggravated felony" is barred by statute from receiving asylum under 8 U.S.C. §§ 1158(b)(2)(A)(ii), (B)(i); cancellation of removal under 8 U.S.C. § 1229b; or withholding of removal under 8 U.S.C. § 1231 if the aggregate term of imprisonment is at least five years. *See* 8 U.S.C. §§ 1158(b)(2)(A)(ii), (B)(i); 8 U.S.C. § 1229b(a)(3); 8 U.S.C. §§ 1231(b)(3)(B)(ii), (iv). Further, an alien is not eligible for withholding of removal under CAT if he has been convicted of an aggravated felony where the aggregate term of imprisonment is at least five years under 8 C.F.R. § 1208.16(d)(2)–(3). Thus, in order to be eligible for the relief he seeks, Wambura had the burden to establish he had not committed an aggravated felony.

Our decision in *Salem v. Holder* illustrates this burden shifting structure under the INA. *Salem v. Holder*, 647 F.3d 111 (4th Cir. 2011). There, the petitioner conceded removability for having been convicted of two or more crimes involving moral turpitude but contested the determination that he was ineligible for cancellation of removal due to his aggravated felony conviction. *Id.* at 114. As to the burden of proof, we noted that "at the relief stage, the clear text of the statute shifts the burden to the removable noncitizen to establish that he 'satisfies the applicable eligibility requirements.'" *Id.* at 116 (quoting 8

---

[6] Emphasizing this point, "[i]f the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply." 8 C.F.R. § 1240.8(d).

U.S.C. § 1229a(c)(4)(A)(i)). An applicant for cancellation of removal must demonstrate by a preponderance of the evidence that he "has not been convicted of any aggravated felony." *Id.* (quoting 8 U.S.C. § 1229b(a)(3)) (internal quotation marks omitted). And because the petitioner there failed to satisfy his statutorily prescribed burden of showing eligibility, we affirmed the BIA's ruling that he was ineligible for cancellation of removal.[7] *Id.*

The same is true here. Wambura had the burden to demonstrate by a preponderance of the evidence that he has *not* been convicted of an aggravated felony, and he failed to do so. Instead, his argument, made before the BIA for the first time and again before this Court, is an improper attempt to shift his burden to the government where removability has already been established, and the evidence establishing the amount of loss is indeed significant. Wambura pled guilty to certain charges, and the district court judgment ordered restitution related to those charges specifically in the amount of $434,687.65 divided between three victims. And any ambiguity about the loss amount is resolved against Wambura. *Id.* at 120.

Wambura has not satisfied his statutory burden to prove eligibility for asylum, cancellation of removal or withholding of removal as he has produced no evidence to establish that his prior fraud convictions did not cause losses in excess of $10,000 and,

---

[7] This outcome is consistent with *Matter of L-A-C-*, where the BIA noted that "while we have sometimes remanded a case if the [Immigration Judge] failed to explain his reliance on a lack of corroborating evidence, the alien bears the ultimate burden of introducing such evidence without prompting from the [Immigration Judge]." *Matter of L-A-C-*, 26 I&N Dec. 516, 523 (BIA 2015).

thus, fell outside of the scope of the theft aggravated felony definition. His argument that it is the government's burden to prove losses in excess of $10,000 overlooks the critical fact that the IJ found two bases for removal: an aggravated felony conviction and two convictions for crimes involving moral turpitude. Wambura acknowledged his removability on account of his convictions for crimes involving moral turpitude, which then required him to establish his eligibility for relief from removal.

We affirm the BIA's ruling. Just as the BIA concluded, due to the nature of Wambura's criminal convictions, Wambura was only eligible for deferral of removal under CAT. *See* 8 C.F.R. § 1208.17.

III.

We now turn to Wambura's arguments about corroborating evidence as they relate to his claim for deferral of removal under CAT. In affirming the IJ, the BIA noted that, among other things, Wambura failed to corroborate his testimony about his involvement with Chadema and about his father's statement that he had been followed by the secret police in Tanzania. Wambura contends 8 U.S.C. § 1229a(c)(4)(B) and agency "good practice" required the IJ to provide advanced notice of the need for corroborative evidence.[8] Wambura also claims the same statute required the IJ, upon determining that he

---

[8] Wambura did not formally request a continuance in order to pursue corroborating evidence. When pressed on this point at oral argument, however, he maintains that his testimony that the Capital Area Immigrants' Rights (CAIR) Coalition possessed information about his case constitutes an implicit request for that opportunity.

11

failed to provide the necessary corroborating evidence, to make a finding as to whether such corroborating evidence was reasonably available. He argues the IJ erred in both respects thereby violating his statutory rights.[9] We address these arguments in turn.

A.

To address Wambura's argument that 8 U.S.C. § 1229a(c)(4)(B) required the IJ to give him advanced notice of the need for corroborative evidence, we begin, as we must, with the text of the statute:

> The applicant must comply with the applicable requirements to submit information or documentation in support of the applicant's application for relief or protection as provided by law or by regulation or in the instructions for the application form. In evaluating the testimony of the applicant or other witness in support of the application, the immigration judge will determine whether or not the testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant has satisfied the applicant's burden of proof. In determining whether the applicant has met such burden, the immigration judge shall weigh the credible testimony along with other evidence of record. **Where the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence.**

8 U.S.C. § 1229a(c)(4)(B) (emphasis added).

The statute does not say anything specific about advanced notice. At best, the statute is silent on this issue.

In light of this silence, we must defer to the BIA's interpretation of the statute so long as it is reasonable. *See Ojo v. Lynch*, 813 F.3d 533, 538 (4th Cir. 2016) ("[W]e

---

[9] Although Wambura characterizes this argument as a statutory violation on appeal, before the BIA, he also claimed it violated his due process rights. A.R. 30.

generally evaluate the BIA's interpretations of the INA's provisions by following the two-step approach announced by the Supreme Court in *Chevron*."); *see also Barahona v. Holder*, 691 F.3d 349, 354 (4th Cir. 2012) ("Under the *Chevron* standard, 'we initially examine the statute's plain language; if Congress has spoken clearly on the precise question at issue, the statutory language controls. If, however, the statute is silent or ambiguous, we defer to the agency's interpretation if it is reasonable.'") (quoting *Midi v. Holder*, 566 F.3d 132, 136–37 (4th Cir. 2009)). And the BIA has, in fact, interpreted the INA's provisions on corroboration in the context of the issue we now face. *Matter of L-A-C-*, 26 I&N Dec. 516 (BIA 2015).

In *Matter of L-A-C-*, the primary issue, as it is here, was "whether an Immigration Judge is required to identify the specific corroborating evidence necessary to meet an applicant's burden to establish a claim for asylum or withholding of removal and to provide an automatic continuance for the applicant to obtain the evidence for presentation at a future hearing." *Matter of L-A-C-*, 26 I&N Dec. at 517. The BIA concluded that § 1158(b)(1)(B)(ii) was not plain on this issue, requiring it to look at the context of the statute as a whole and the legislative history for guidance. *Id.* at 518. It noted that Congress intended to codify the standards set forth by the BIA in *Matter of S-M-J-*, 21 I&N Dec. 722 (BIA 1997). It further noted that *Matter of S-M-J-* did not require the IJ to identify the specific corroborating evidence that would be considered persuasive to meet the applicant's burden of proof. *Id.* at 520. Nor did it require the IJ to grant an automatic continuance for the applicant to present that corroborating evidence at yet another future merits hearing. Instead, the BIA held the applicant should be given an opportunity to explain why he could

13

not obtain such evidence and that explanation should be included in the record as well as whether the explanation was sufficient. *Id.* at 521. The BIA explained it was up to the IJ to decide, within his discretion, whether to grant a continuance for the applicant to obtain additional corroboration. *Id.* at 522.

In *Matter of L-A-C-*, the BIA also explained that applicants already had notice about the potential need for corroborating evidence. More specifically, the instructions on the Form I-589 application for asylum and withholding of removal specifically provides notice of the need to provide evidence of general conditions in the country from which the applicant is seeking asylum or other protection and specific facts to support the claim. *Id.* at 521 n. 3. And, the BIA pointed out that the statutory language provides notice of the potential need for corroborating evidence.

Wambura correctly argues that in *Matter of L-A-C-*, the BIA acknowledged that an IJ could choose to remind an applicant for relief of his burden to establish his claim and about the general types of evidence useful to corroborate a claim and even suggested that doing so is a "matter of good practice." *Matter of L-A-C-*, 26 I&N Dec. at 521 n.3. But it also made clear that good practice "is far different from requiring the Immigration Judge to identify at the merits hearing the specific evidence that he or she would find persuasive to meet the applicant's burden of proof under the facts particular to that case and to then grant the applicant an automatic continuance to obtain it for presentation at a later hearing." *Id.*

Wambura also points out, again correctly, that two of our sister courts have reached a different result. Wambura asks this Court to follow *Ren v. Holder*, 648 F.3d 1079 (9th

Cir. 2011) and *Saravia v. Attorney General*, 905 F.3d 729 (3d Cir. 2018), which hold that where an IJ determines corroborative evidence is necessary, the statute requires notice of the need for the evidence and an opportunity for the petitioner to provide it before the IJ makes a final decision. In *Ren*, the Ninth Circuit concluded the statute was clear on the point, such that the court as well as the agency must give effect to the unambiguously expressed intent of Congress under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Ren v. Holder*, 648 F.3d at 1092. The Ninth Circuit concluded that "[i]t would make no sense to ask whether the applicant can obtain the information unless he is to be given a chance to do so." *Ren*, 648 F.3d at 1091. The Third Circuit reached a similar conclusion in *Saravia*, recognizing a circuit split but concluding that for meaningful review, an IJ must give an applicant notice and an opportunity to corroborate his claim. *Saravia*, 905 F.3d at 738.

But the majority of circuit courts that have addressed this issue, like the BIA, have concluded that advanced notice is not required. In *Gaye v. Lynch*, the Sixth Circuit noted that the text itself does not suggest that the applicant is entitled to notice from the IJ as to what evidence he should present. *Gaye v. Lynch*, 788 F.3d 519, 530 (6th Cir. 2015). Disagreeing with the Ninth Circuit, the Sixth Circuit concluded "[e]ven if it could be said that the statute is silent on the issue, and thus possibly could allow for such a construction (and we conclude it does not), it is plainly erroneous to say that the statute unambiguously mandates such notice." *Id*. In *Liu v. Holder*, the Second Circuit held that even "though we require an IJ to specify the points of testimony that require corroboration, we have not held that this must be done *prior* to the IJ's disposition of the alien's claim." *Liu v. Holder*, 575

15

F.3d 193, 198 (2d Cir. 2009). The court reasoned that "an IJ may not determine that corroboration is necessary until all the evidence is in, and the IJ has had an opportunity to weigh the evidence and prepare an opinion . . . ." *Id*.; *see also Wei Sun v. Sessions*, 883 F.3d 23, 31 (2d Cir. 2018) (rejecting the Ninth Circuit's reading of 8 U.S.C. § 1158(b)(1)(B)(ii) as reading into the statute the requirements of "notice" and an "opportunity" to produce the absent corroborating evidence). The Seventh Circuit in *Rapheal v. Mukasey* rejected the notion that a petitioner must receive additional notice from the IJ and then an additional opportunity to provide corroborative evidence, as such an approach would be "imprudent where the law clearly notifies aliens of the importance of corroborative evidence." *Rapheal v. Mukasey*, 533 F.3d 521, 530 (7th Cir. 2008). The Eighth Circuit decided similarly in *Uzodinma v. Barr*, recognizing that at a merits hearing an IJ need not identify the specific corroborating evidence that would be persuasive, nor must an IJ grant an automatic continuance for the applicant to later provide corroborating evidence. *Uzodinma v. Barr*, 951 F.3d 960, 966–67 (8th Cir. 2020). Finally, in *Avelar-Oliva v. Barr*, the Fifth Circuit also rejected the notion that an IJ must provide "additional *advance* notice of the specific corroborating evidence necessary to meet the applicant's burden of proof and an *automatic* continuance for the applicant to obtain such evidence." *Avelar-Oliva v. Barr*, 954 F.3d 757, 771 (5th Cir. 2020).

In our view, the BIA reasonably interpreted the INA in *Matter of L-A-C-* as it addressed the burden of proof for both asylum and withholding of removal applications.[10] Accordingly, we join the majority view that the INA does not require an IJ to give an alien seeking relief from removal advance notice of specific corroborating evidence necessary to establish his claim or grant an automatic continuance to allow him to obtain such evidence.[11] Section 1229a(c)(4)(B) does not reveal Congressional intent, much less clear intent, to require advance notice of a perceived lack of necessary corroborative evidence. Accordingly, we give the BIA's decision, which relied on *Matter of L-A-C-*, the deference as required by *Chevron*.

B.

Finally, we turn to Wambura's argument that the BIA erred in affirming the IJ's decision which did not make findings on whether corroborative evidence was reasonably available. In support of this argument, Wambura points to 8 U.S.C. § 1229a(c)(4)(B) which

---

[10] We note that the role of corroboration as it relates to an applicant's burden of proof is the same for purposes of asylum, withholding of removal, and relief under CAT. *See* 8 U.S.C. § 1158(b)(1)(B)(ii) ("Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence."); 8 U.S.C. § 1231 (providing that for purposes of withholding of removal and relief under CAT, 8 U.S.C. § 1158(b)(1)(B) provides the applicable burden of proof).

[11] We also note the IJ granted several continuances and worked with Wambura on getting counsel, informed him of the seriousness of crimes and talked about potential relief. There is nothing "arbitrary and capricious" about how the BIA addressed the due process arguments Wambura raised below or its ultimate conclusion that the IJ provided the respondent with a meaningful opportunity to be heard and present testimony, documents and arguments in support of his application. J.A. 6.

17

states, "[w]here the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence." Wambura contends that the statutory language requires the IJ to make findings on whether corroborative evidence was reasonably available to him. And since the IJ did not address this issue in her decision, Wambura contends the BIA's decision affirming the IJ violated his statutory rights.

To assess this argument, we begin by reviewing how the IJ addressed corroborating evidence at the hearing. Counsel for DHS asked Wambura why there were no statements presented by the Chadema party members and questioned further: "There's nothing to corroborate your claims. Is there a reason why?" J.A. 94. The IJ followed up on this line of questioning by pointing out that there was no one from the Chadema to testify in support of him or provide any correspondence in support of his claims. J.A. 95. Wambura responded that he was unable to get in touch with anyone from the party, nor could he gain access to his email account to retrieve additional documentation. J.A. 93, 95. Thus, it seems clear that Wambura was notified about the evidence that needed corroboration and was given an opportunity to explain why he did not provide corroborating evidence.

The IJ and the BIA then addressed the lack of corroborating evidence in their decisions denying the relief sought by Wambura. In her opinion, the IJ explained that while Wambura indicated that he spoke to his father who told him he was being followed by the secret police, there was no letter from his father or information to corroborate Wambura's contentions. J.A. 14. The IJ also noted that there was no one offering testimony in support

18

of Wambura and no statements, letters or affidavits in support of local Chadema members in support of his contentions. J.A. 12. Likewise, the BIA cited this same lack of corroborating evidence in affirming the IJ.

Despite those findings, the IJ did not discuss whether the corroborating evidence she mentioned in her decision was reasonably available. And the BIA did not address this issue in affirming the IJ's denial of Wambura's application for CAT deferral of removal, in part due to the lack of corroborating evidence. Even the government seems to agree that such a finding was not made.[12]

Our question then is whether the statute requires such a finding. To answer that question, we, once again, look to the text. "Where the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1229a(c)(4)(B).

This language requires a threshold determination before addressing the need for corroborating evidence or its availability. The Agency must first address whether there is "otherwise credible testimony." *Id.* Absent that, the statute does not require either

---

[12] While Wambura argues this violated his statutory rights, the government, for its part, contends that any such violation was harmless because the omission of the finding did not result in a fundamentally unfair proceeding or affect the outcome of his removal proceeding. While we recognize that this Court has applied the harmless error analysis to immigration cases, *see Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004), we cannot conclude on this record that the error "clearly had no bearing on the procedure used or the substance of the decision reached." *Id*. (quoting *Massachusetts Trs. of E. Gas & Fuel Associates v. United States*, 377 U.S. 235, 248 (1964)).

19

corroboration or a finding about its reasonable availability. As noted above, the IJ gave Wambura a mixed credibility finding. Then, on appeal, the BIA assumed credibility stating that "[t]he Immigration Judge did not make an explicit credibility finding. . . ." J.A. 5. Those findings do not sufficiently address the statute's threshold requirement. Accordingly, we remand the case to the Agency to determine whether there was "otherwise credible testimony" in need of corroboration.

If there is a finding that Wambura did not offer "otherwise credible testimony," nothing more is required. But if Wambura offered "otherwise credible testimony" and does not provide corroborating evidence that the Agency believes should be provided, then the statute requires the Agency to determine whether the corroborating evidence was reasonably available.

We believe this conclusion is compelled by the language of the statute. It is also consistent with other INA provisions regarding orders of removal. "No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence, as described in section 1158(b)(1)(B), 1229a(c)(4)(B), or 1231(b)(3)(C) of this title, unless the court finds, pursuant to subsection (b)(4)(B), that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4). In order to make the decisions required by this statute, immigration judges must make the findings outlined above. *See Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("For the courts cannot exercise their duty of review unless they are advised of the considerations underlying the action under review.").

20

## IV.

For the reasons set forth above, we must grant the petition for review as it relates to whether the IJ erred by failing to make a finding on whether corroborative evidence was reasonably available to the petitioner. We remand that claim for further proceedings consistent herewith. We deny the petition for review as to all other issues.

*PETITION FOR REVIEW GRANTED IN PART, DENIED IN PART AND REMANDED*

PAMELA HARRIS, Circuit Judge, concurring in the judgment:

I agree with the majority that in the posture of this case, it was the petitioner, Mokorya Cosmas Wambura, who bore the burden of showing that he had not been convicted of an aggravated felony, and that he failed to carry his burden. *See* Maj. Op. Part II. I also agree that once Wambura explained to the IJ why he had not provided the requested corroborating evidence, the IJ was required to – but did not – determine whether Wambura had given "otherwise credible testimony," and, if so, whether he could "reasonably obtain" the corroborating evidence she deemed necessary. *See* Maj. Op. Part III.B.

In my view, however, that is the end of this case, and unlike the majority, I would stop there. Had Wambura, when pressed by the IJ for corroborating evidence, requested time to provide it, then we would have a case implicating the split in authority the majority describes: Some courts have deferred to the BIA's ruling in *Matter of L-A-C-*, 26 I. & N. Dec. 516, 520–22 (B.I.A. 2015), that an applicant need not be given advance notice of required corroborating evidence and a continuance to obtain it, *see*, *e.g.*, *Avelar-Oliva v. Barr*, 954 F.3d 757, 770–71 (5th Cir. 2020), while others, primarily the Ninth Circuit, insist that an IJ provide notice of any required corroborating evidence and a continuance to seek out such evidence before rendering a final decision, *see*, *e.g.*, *Ren v. Holder*, 648 F.3d 1079, 1092–93 (9th Cir. 2011). *See* Maj. Op. Part III.A.

But none of that matters in this case, because here, Wambura, notified by the IJ of the corroboration she deemed necessary, *see* Maj. Op. at 18, did *not* seek time, formally or otherwise, to provide that evidence. Nor, on my read of the record, did he do anything else

22

to suggest that such evidence might be forthcoming.  Instead, Wambura explained why he could *not* provide the IJ with the evidence she sought.  *See id.*; J.A. 93–94, 96 (describing Wambura's inability to access his email account or the internet while in detention).  Under those circumstances, whether a continuance to provide corroborating evidence is mandatory, *see Ren*, 648 F.3d at 1093, or discretionary, *see Matter of L-A-C-*, 26 I. & N. Dec. at 521–22, is beside the point.  All that remains is for the IJ to evaluate Wambura's explanation for why he cannot produce the requested corroboration, making the findings described by the majority in Part III.B of its opinion.  *See Ren*, 648 F.3d at 1092 n.12 (explaining that when an applicant states that he "does not have the evidence and cannot reasonably obtain it," a continuance and second hearing are unnecessary and instead the IJ must assess the explanation and the reasonable availability of the evidence in question).

Because I believe the holding in Part III.A of the majority opinion is unnecessary to the disposition of the case before us, I would adhere to our usual practice and refrain from deepening a circuit split on the question.  *See In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 491 n.14 (4th Cir. 2020).  Accordingly, I concur in the judgment and in Parts I, II, and III.B of the majority's fine opinion.