**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-2131**

EDWIN ALEXANDER ROMERO ZAMBRANO,

    Petitioner,

  v.

JEFFERSON B. SESSIONS III, Attorney General,

    Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: September 12, 2017      Decided: December 5, 2017

Before KEENAN and WYNN, Circuit Judges, and John A. GIBNEY, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

Petition for review granted; vacated and remanded by published opinion. Judge Gibney wrote the opinion, in which Judge Keenan and Judge Wynn joined.

**ARGUED:** Benjamin Winograd, IMMIGRANT & REFUGEE APPELLATE CENTER, LLC, Alexandria, Virginia, for Petitioner. Rebecca Hoffberg Phillips, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Laura Jacobsen, L&L IMMIGRATION LAW, PLLC, Alexandria, Virginia, for Petitioner. Chad A. Readler, Acting Assistant Attorney General, John S. Hogan, Assistant Director, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

GIBNEY, District Judge:

Edwin Romero Zambrano appeals the decision of the Board of Immigration Appeals (the "BIA") to affirm an Immigration Judge's ("IJ") decision to deny his application for asylum. Romero Zambrano claims that the BIA applied the wrong legal standard in assessing his asylum eligibility and the wrong standard of review when evaluating the IJ's decision. As explained below, we agree that the BIA applied the wrong legal standard for assessing asylum eligibility and therefore grant the petition for review and remand to the BIA for further proceedings.

I.

Romero Zambrano, a native citizen of Honduras, joined the Honduran military after high school and helped local police arrest gang members. After Romero Zambrano left the army, members of the "Barrio Pobres" from the 18th Street gang tried to track him down to get their revenge. Romero Zambrano moved frequently to avoid detection and tried unsuccessfully to enter the United States five times. He finally managed to enter the United States in August 2011.

The gang's search for him continued. In 2012, armed men broke into the apartments of Romero Zambrano's sister and former girlfriend in San Pedro Sula, Honduras, asking about his location. Gang members continued to threaten his friends and family for more than a year after that.

In early 2014, U.S. immigration authorities arrested the petitioner. The gang heard about Romero Zambrano's potential deportation and increased their efforts to find him. In March 2014, gang members approached his family and friends in three different Honduran cities. First, several gang members assaulted one of the petitioner's brothers in Elixir, Honduras. The members tied up the brother and his family while demanding to know Romero Zambrano's whereabouts. Next, masked gang members broke into the home of the petitioner's other brother in Choloma, Honduras, asking where Romero Zambrano lived. Gang members also confronted the petitioner's former girlfriend while she visited San Pedro Sula and demanded to know where they could find the petitioner.

After his 2014 arrest by the immigration authorities, Romero Zambrano sought asylum based on the new assaults on his family. Ordinarily, an alien must apply for asylum within one year after entering the United States. Since the petitioner entered the country in 2012, the deadline would fall sometime in 2013. But the deadline is flexible if the alien can show "the existence of changed circumstances which materially affect the applicant's eligibility for asylum." 8 U.S.C. §§ 1158(a)(2)(B), (a)(2)(D). If an applicant can show changed circumstances, he must file for asylum within a "reasonable period." 8 U.S.C. § 1252(a)(2)(D).

The legal meaning of "changed circumstances" is the central issue in this appeal. Romero Zambrano argued to the IJ and the BIA that the 2014 attacks on his family represented changed circumstances from the 2012 incidents due to the increased violence against his family members and the new scope of the search for him spanning various cities. The IJ rejected the petitioner's argument and denied his application as untimely.

3

The IJ held that more severe attacks cannot amount to changed circumstances. Specifically, the IJ said that:

> [T]he Respondent [Romero Zambrano] argues that the recent intensification of threats and the 'increasing proof' of their basis constitute materially changed circumstances. . . . This argument is unpersuasive. Two years ago, there was substantial evidence that his family members were targeted and questioned. Additional proof of pre-existing persecution is not a changed circumstance materially affecting the Respondent's eligibility for asylum.

J.A. 75. Thus, the IJ denied the petition.[1]

Romero Zambrano appealed, but the BIA rejected his arguments and affirmed the IJ's decision. The BIA found that "the 2014 incidents were an escalation of the 2012 incidents." Nevertheless, the BIA held that "we agree with the Immigration Judge that additional proof of an existing claim does not establish changed circumstances." J.A. 4.

## II.

On appeal, the petitioner raises two issues: (1) whether circumstances that provide additional proof in support of an existing asylum claim can satisfy the "changed circumstances" exception to the one-year filing deadline; and (2) whether the BIA should have applied *de novo* review rather than clear error review in evaluating the IJ's determination that the petitioner did not qualify for the changed circumstances exception.

---

[1] Recognizing the danger in Romero Zambrano's homeland, the IJ did grant withholding of removal under 8 U.S.C. § 1231(b)(3). Under the Immigration and Nationality Act ("INA"), aliens who fear persecution in their native countries may apply for two forms of relief: asylum under 8 U.S.C. § 1158, and withholding of removal under 8 U.S.C. § 1231(b)(3). Asylum provides more benefits than withholding, such as the ability to apply for lawful permanent residence and to petition for spouses and children to receive asylum. *Zuh v. Mukasey*, 547 F.3d 504, 508 (4th Cir. 2008). In contrast, withholding gives the alien a safe place to stay until the danger lifts.

Because we find that the BIA misinterpreted the changed circumstances exception, we need not reach the second issue of whether the BIA applied the incorrect standard of review to the IJ's decision.

A.

The petitioner's claim raises the threshold question of this Court's jurisdiction. The courts generally lack jurisdiction to review the discretionary decisions of an IJ or the BIA that an asylum applicant has failed to show changed circumstances. *Gomis v. Holder*, 571 F.3d 353, 358–59 (4th Cir. 2009). The REAL ID Act of 2005, however, grants this Court jurisdiction where a petitioner raises a colorable "question of law" regarding the BIA's determination. 8 U.S.C. § 1252(a)(2)(D); *Gomis*, 571 F.3d at 358–59. A number of our sister courts have found that a reviewable question of law exists where an agency used the wrong legal standard in coming to a discretionary determination. *See Mandebvu v. Holder*, 755 F.3d 417, 426 (6th Cir. 2014) (exercising jurisdiction where the petitioner sought to "determine as a matter of law whether the IJ improperly required that they prove something not required by the statute"); *Weinong Lin v. Holder*, 763 F.3d 244, 247 (2d Cir. 2014) (exercising jurisdiction where the petitioner's claim concerned the BIA's categorical interpretation of the meaning of "changed circumstances"). In other words, the factual question of what happened is unreviewable, but the Court has jurisdiction to decide questions of law concerning the legal definition of a changed circumstance.

5

Romero Zambrano simply asks this Court to review the legal standard applied by the IJ and the BIA. Specifically, the petitioner asks the Court whether the IJ and the BIA improperly interpreted 8 U.S.C. § 1158(a)(2)(D) to mean that additional proof in support of a pre-existing but unasserted asylum claim cannot, as a matter of law, satisfy the changed circumstances exception. What the underlying circumstances are, and what changes occurred, are unreviewable factual questions. But the definition of a changed circumstance presents a distinctly legal question over which this Court may properly exercise jurisdiction.

B.

Where the BIA has adopted and supplemented the IJ's decision, a court on appeal reviews both rulings. *Barahona v. Holder*, 691 F.3d 349, 353 (4th Cir. 2012). We review legal determinations *de novo*, while giving proper deference to the BIA's interpretations of the Immigration and Nationality Act. *Martinez v. Holder*, 740 F.3d 902, 909 (4th Cir. 2014). For unpublished BIA opinions such as the one here, this Court does not give the BIA's statutory interpretations *Chevron* deference, but instead may look to the BIA's opinion as "guidance" based upon "the thoroughness evident in [the BIA's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Id.* at 909–10 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1994)) (citations omitted).

"[T]he process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." *Cordova v. Holder*, 759

F.3d 332, 338 (4th Cir. 2014) (internal quotation omitted). "[W]hen a BIA order does not demonstrate that the agency has considered an issue, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Id.* (quoting *Nken v. Holder*, 585 F.3d 818, 822 (4th Cir. 2009)) (citations omitted).

*i.*

This Court has not had the opportunity to address whether facts that provide additional proof in support of a pre-existing asylum claim can satisfy the changed circumstances exception to the one-year filing deadline, but other circuits have addressed the issue. In *Vahora v. Holder*, the Ninth Circuit reversed the BIA where the circuit court determined that the IJ and BIA had interpreted "changed circumstances" as "requiring the applicant to show that, prior to the change in circumstances, the applicant could not have filed a meritorious application, and that the change in circumstances resulted in an application that could succeed." 641 F.3d 1038, 1044 (9th Cir. 2011). The Ninth Circuit rejected that interpretation after looking at Congress's intent in creating the exception. *Id.* at 1045. Senator Orrin Hatch, one of the main proponents of the one-year deadline for asylum applications, stated that he wanted to "ensure that asylum is available for those with legitimate claims for asylum" and said:

> [T]he exception is intended to deal with circumstances that changed after the applicant entered the United States that are relevant to the applicant's eligibility for asylum. The changed circumstances provision will deal with situations like those in which the situation in the alien's home country may have changed, [or] the applicant obtains more information about likely retribution he or she might face if the applicant returned home.

7

*Id.* at 1045 (quoting 142 Cong. Rec. S11838–40 (daily ed. Sept. 30, 1996) (statement of Sen. Orrin Hatch)) (emphasis omitted). The *Vahora* court reasoned that "[a]n applicant is not required to file for asylum when his claim appears to him to be weak; rather he may wait until circumstances change and the new facts make it substantially more likely that his claim will entitle him to relief." 641 F.3d at 1044 (citing *Fakhry v. Mukasey*, 524 F.3d 1057, 1063 (9th Cir. 2008)). The changed circumstances exception applies even if the applicant may have been eligible for asylum before the new information. *Id.* at 1047.

In *Weinong Lin v. Holder*, the Second Circuit determined that the BIA and IJ erred where the BIA categorically held that "even if the facts about a person's objective circumstances change, when they are altered by actions driven by 'the same reason' that led to a decision to emigrate, they cannot constitute changed circumstances." 763 F.3d at 247. In *Mandebvu v. Holder*, the Sixth Circuit reversed the decisions of an IJ and the BIA where they interpreted the changed circumstance exception to "require that an asylum applicant, in order to excuse delay in filing beyond the one-year deadline, demonstrate that he would not have been eligible for asylum had he applied before the change in country conditions." 755 F.3d at 426 (remanding because the BIA categorically determined that "incremental change" (or change that strengthened an applicant's pre-existing fear of persecution) could not satisfy the changed circumstances exception).

8

*ii.*

This Court agrees with the logic of the Ninth, Second, and Sixth circuits. New facts that provide additional support for a pre-existing asylum claim can constitute a changed circumstance. These facts may include circumstances that show an intensification of a preexisting threat of persecution or new instances of persecution of the same kind suffered in the past. The Court remands to the BIA and leaves the determination of whether the facts on record constitute changed circumstances which materially affect the petitioner's eligibility for asylum to the BIA's sound discretion.

III.

The BIA erred when it categorically held that additional proof of an existing claim does not establish changed circumstances. Accordingly, we grant the petition for review, vacate the BIA's order, and remand the case to the BIA for further consideration in light of this opinion.

*PETITION FOR REVIEW GRANTED; VACATED AND REMANDED*