**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 21-1371**
_____

ZUOWEI CHEN,

        Petitioner,

    v.

MERRICK B. GARLAND, Attorney General,

        Respondent.

_____

On Petition for Review of an Order of the Board of Immigration Appeals.

_____

Argued:  January 26, 2023                Decided:  July 6, 2023

_____

Before GREGORY, Chief Judge, and HARRIS and QUATTLEBAUM, Circuit Judges.

_____

Petition for review granted; vacated and remanded by published opinion.  Judge Harris wrote the opinion, in which Chief Judge Gregory and Judge Quattlebaum joined.

_____

**ARGUED:**  Tamara L. Jezic, JEZIC & MOYSE, LLC, Wheaton, Maryland, for Petitioner. Brett Fredrick Kinney, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Brian Boynton, Acting Assistant Attorney General, Kohsei Ugumori, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

PAMELA HARRIS, Circuit Judge:

Petitioner Zuowei Chen is a native of China admitted to the United States on a student visa in 2009. Chen now seeks review of a Board of Immigration Appeals order denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture. If removed to China, Chen fears, he will be persecuted and tortured by Chinese authorities, who in 2008 allegedly imprisoned and violently beat him because of his Christian beliefs and practices.

We find there are aspects of the agency's decision that require clarification before we can meaningfully review Chen's claims. Accordingly, we vacate the decision of the Board of Immigration Appeals and remand for further explanation, consistent with this opinion.

## I.

## A.

In 2009, Zuowei Chen came to the United States from China, admitted on a student visa. Though his visa required him to attend school, Chen never did so. Nor did he apply for asylum within the standard one-year period. *See* 8 U.S.C. § 1158(a)(2)(B) (requiring applicant to file for asylum within one year of arrival in the United States, subject to certain exceptions).

In 2014, however, Chen did seek asylum. Later that year, the Department of Homeland Security charged Chen with removability, citing his failure to attend school as required by his student visa. Chen, through counsel, conceded removability. But he

2

continued to pursue asylum, and also sought relief in the form of withholding of removal and protection under the Convention Against Torture ("CAT").

In a written statement accompanying his asylum application, Chen claimed that before he left China in 2009, he was persecuted by the Chinese government for his Christian beliefs and practices. According to Chen, he was introduced to Christianity in 2007, by co-worker and friend Huibin Sun He, and began attending services at Huibin Sun's house church. On July 27, 2008, Chinese police officers interrupted a "gospel meeting" at the house church, arrested Chen and his fellow congregants, and interrogated the churchgoers about their Christian faith. A.R. 240. Chen was ordered to "confess [his] crimes" and "identify other leading [church] members," and when he did not, the "police beat [him] violently" and threatened to break his legs. A.R. 240–41. Chen was imprisoned for three days, during which the police encouraged other prisoners to abuse him. He was released only after his parents paid a fine and he signed a "confession" promising never to "engage in illegal activities again," which Chen took to mean he could no longer practice his Christian faith. A.R. 241.

Even after his release, Chen was required to report regularly to the Chinese police. During those meetings, the police "abused [him] mentally" and threatened him with additional jail time if he did not identify other members of his church. A.R. 241. In 2009, with the help of friends, Chen left China and came to the United States. At the close of his written statement, Chen explained that while he had hoped he could someday return to China, he had recently learned that the Chinese police "never stopped tracing [him]," and

3

that they had accused him of violating his release agreement and committing new crimes necessitating more severe punishment. A.R. 241.

Along with his written statement, Chen submitted to the Immigration Judge ("IJ") a two-paragraph affidavit from his mother. In her affidavit, Chen's mother corroborated the broad outlines of Chen's account of his arrest in July 2008, stated that the police continued to search for Chen after his departure in 2009, and expressed her belief that Chen could not safely return. Chen also submitted a letter of support from his local Christian church in Rockville, Maryland, and two recent State Department country-condition reports on religious freedom and general conditions in China.

**B.**

After a hearing, the IJ issued an oral decision denying all forms of relief from removal. First, the IJ ruled that Chen's asylum application – filed in 2014, roughly five years after he arrived in the United States – was time-barred under 8 U.S.C. § 1158(a)(2)(B), which ordinarily requires applicants to file within a year of entry. Chen relied on an exception for cases in which an applicant can show "changed circumstances which materially affect [his] eligibility for asylum," § 1158(a)(2)(D), and testified, consistent with his written statement, that he had learned only recently from his parents that Chinese police were still searching for him as late as December 2018. But the authorities' continued interest in finding Chen, the IJ reasoned, was not a "changed circumstance" that would justify a late filing. *See* A.R. 44 (Chen's "statement as to why he left China was consistent with the statement as to why he's concerned [now] about the

4

police looking for him and therefore the Court finds that [Chen] has not met his burden of showing changed circumstances").

The IJ next rejected Chen's claim to withholding of removal, finding that Chen had established neither past persecution nor a likelihood of future persecution if returned to China. With respect to past persecution, the IJ focused on Chen's failure to corroborate, through hospital records or a more detailed affidavit from his mother, the nature of the injuries he allegedly suffered when beaten in prison. With respect to the prospect of future persecution, the IJ again relied on a failure "to provide corroborating evidence where corroborating evidence could have been provided," A.R. 45 – including the absence of affidavits from fellow congregants in China attesting to Chen's church-going and arrest, A.R. 45 ("It would seem to the Court that had [Chen], in fact, been involved in church activities and . . . [been] arrested with members of his church that the minister at least would have provided him with an affidavit that he had been attending church and he had been arrested.").

Finally, the IJ denied Chen relief under the CAT. For a "similar reason" to that already given, the IJ found, Chen had failed to show it was more likely than not that he would be subjected to torture in his home country. Moreover, he continued, the three days of imprisonment and beating alleged by Chen did not "rise to the level of severe punishment" constituting torture under the CAT. A.R. 45–46.

In a single-member opinion, the Board of Immigration Appeals ("BIA" or "Board") dismissed Chen's appeal and affirmed the IJ's decision. The BIA agreed with the IJ that no "changed circumstance" could excuse Chen's untimely asylum application: "[Chen]

5

testified that the police have been looking for him since he left, and had never stopped. Thus, there is no change in circumstances." A.R. 3–4. The Board also agreed that Chen had not established eligibility for withholding or CAT protection because he had not adequately corroborated his claim. In addition to the missing hospital records, the BIA noted the lack of detail in Chen's mother's affidavit and the IJ's finding that there was no other "corroborating evidence concerning [Chen's] arrest, detention, or activities as a Christian in China." A.R. 4. All told, the BIA held, the IJ had permissibly concluded that Chen's testimony and the "minimal" corroborating evidence presented were insufficient to meet the standard of proof for withholding of removal or CAT protection. A.R. 4.

Chen timely petitioned this court for review.

## II.

The standard under which we review Chen's claim is well established. Where, as here, the BIA adopts the IJ's opinion and supplements it with its own reasoning, we consider both rulings on appeal. *Cedillos-Cedillos v. Barr*, 962 F.3d 817, 823 (4th Cir. 2020) (internal quotation marks omitted). We review the agency's factual findings for substantial evidence and will reverse them only if "any reasonable adjudicator would be compelled to conclude to the contrary." *Cabrera Vasquez v. Barr*, 919 F.3d 218, 222 (4th Cir. 2019) (internal quotation marks omitted); *see also* 8 U.S.C. § 1252(b)(4)(B). Legal determinations are reviewed de novo. *Portillo Flores v. Garland*, 3 F.4th 615, 625 (4th Cir. 2021).

6

Sometimes, however, the agency's failure to fully explain itself prevents us from engaging in meaningful review under that standard. *See Zelaya v. Holder*, 668 F.3d 159, 168 (4th Cir. 2012). When that happens, the proper course is generally to remand to the agency for additional explanation. *See id.* We conclude that this is just such a case, and accordingly, we grant the petition for review, vacate the BIA's order, and remand for clarification, as outlined below.

## A.

We first require clarification as to the basis for the agency's determination that Chen cannot show "changed circumstances" that would reset the clock for seeking asylum under 8 U.S.C. § 1158(a)(2)(D). *See Zambrano v. Sessions*, 878 F.3d 84, 86 (4th Cir. 2017) (explaining time limit for asylum applications and "changed circumstances" exception). According to the government, the IJ and BIA did no more than make and affirm a discretionary factual finding that Chen failed to demonstrate changed circumstances – a finding we would lack jurisdiction to review. *See id.* at 87. Chen, on the other hand, insists that the agency applied an incorrect *legal* standard in reviewing his claim, so that his case raises a "question of law" over which we retain jurisdiction. *See id.*; 8 U.S.C. § 1252(a)(2)(D). Because both are colorable readings and nothing on the face of the opinions settles the matter, we remand for further explanation.

The question here arises from our 2017 decision in *Zambrano*, construing the term "changed circumstances" as used in § 1158(a)(2)(D). 878 F.3d at 86–89. The agency had adopted an interpretation that categorically excluded from "changed circumstances" any new episodes of the same kind of persecution suffered in the past. *Id.* at 86. Zambrano,

for instance, had fled Honduras to escape gang members trying to find and retaliate against him, and then argued for "changed circumstances" based on a more recent and intensified gang search. *Id.* at 85–86. The agency denied his claim on the ground that "[a]dditional proof of pre-existing persecution" can never be a "changed circumstance" materially affecting eligibility for asylum. *Id.* at 86. But we disagreed and held that "an intensification of a preexisting threat of persecution or new instances of persecution of the same kind suffered in the past" may indeed amount to "changed circumstances" under § 1158(a)(2)(D). *Id.* at 88.

It is not clear to us whether the agency here applied our then-recent decision in *Zambrano*. Neither the IJ nor the BIA dealt with the issue in more than a sentence or two, and neither cited *Zambrano* or any other legal authority. But it is certainly possible to read the BIA's controlling opinion as Chen does: as reasoning, in its entirety, that because the police already were searching for Chen when he left China, a continuation of such searches could never qualify as a "change" in circumstances. *See* A.R. 3–4 ("[Chen] testified that the police have been looking for him since he left, and had never stopped. *Thus*, there is no change in circumstances." (emphasis added)). And on that reading, there would be a serious question – unaddressed by the agency – as to whether the Board's decision could be reconciled with *Zambrano*.

The government does not dispute that under *Zambrano*, Chen's recent discovery that Chinese police continued to search for him – and, indeed, seemed to believe he had committed new crimes deserving of heightened punishment – *could* constitute "changed circumstances" allowing for a late-filed asylum application. Instead, it argues that the

8

agency applied this rule *sub silentio*, and then made a discretionary and unreviewable finding that Chen had failed to *prove* such a change in circumstances. Perhaps so. But because we lack more specific reasoning making clear the basis for the agency's determination, the proper course is to remand for clarification and for the agency to apply *Zambrano* in the first instance. *See Zambrano*, 878 F.3d at 88 (remanding for agency to decide, in its discretion, whether the facts in the record showed changed circumstances).

**B.**

We turn next to Chen's claims for withholding of removal and protection under the CAT. The agency denied both on the ground that Chen failed to adequately corroborate his claim of religious persecution, past or future.[1] Here, too, we find that clarification on certain points is necessary before we may meaningfully review the agency's determination.

**1.**

As described above, in finding that Chen had not met his burden of showing past persecution or the requisite likelihood of future persecution or torture, the IJ relied significantly on Chen's failure to provide various forms of potential corroborating evidence. In *Wambura v. Barr*, 980 F.3d 365, 375 (4th Cir. 2020), we held that before requiring an applicant to "provide evidence which corroborates otherwise credible

---

[1] In denying Chen relief under the CAT, the IJ also opined that Chen's detention and beating did not rise to the level of "severe punishment amounting to torture." A.R. 45–46. The Board, however, did not adopt or affirm this holding in its final order, finding only that Chen failed to adequately corroborate his claim. Accordingly, the IJ's alternative holding is not before us for review. *See Cordova v. Holder*, 759 F.3d 332, 337 (4th Cir. 2014) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943)).

testimony" under 8 U.S.C. § 1229a(c)(4)(B), an IJ must make a "threshold determination" that there is testimony that is "otherwise credible" but still in need of corroboration. The parties agree that there was no express finding to that effect here, and Chen argues that a remand is therefore required.

It is not clear to us, however, whether the IJ in fact triggered the *Wambura* rule by requiring Chen to provide corroborating evidence for otherwise credible testimony. In addition to authorizing an IJ to require such corroboration by reasonably obtainable evidence, § 1229a(c)(4)(B) instructs IJs to consider both an applicant's testimony and "other evidence of record," including "documentation in support of the [] application," in determining whether an applicant has met his burden of proof. So here, the IJ may have simply found that Chen's testimony and documentation, taken together, did not meet his burden of proof. *See Matter of L-A-C-*, 26 I. & N. Dec. 516, 519 (B.I.A. 2015) ("[R]egardless of whether an applicant is deemed credible, he has the burden to corroborate the material elements of the claim where the evidence is reasonably obtainable . . . ."). Indeed, the BIA suggested as much in reviewing the IJ's decision. *See* A.R. 4 ("The Immigration Judge permissibly concluded that [Chen's] testimony, alone, or coupled with the minimal evidence presented, was insufficient to meet the standard of proof for withholding of removal or protection under the CAT.").

But, importantly, neither party before us reads the agency's opinions that way. Instead, the government, like Chen, insists that the IJ *did* in fact seek additional corroborating evidence for "otherwise credible testimony" as contemplated by *Wambura*. And there is some support for this reading, too, in the Board's opinion, which cites

10

*Wambura* and notes that "[e]ven for credible testimony, corroboration may be required." A.R. 4. On that understanding, the government argues, the IJ was required to make a "threshold determination" under *Wambura* – and did so by way of an implicit finding, never made express but still readily discernible, that Chen's testimony was "otherwise credible" yet in need of additional corroboration.[2]

The agency's opinions and parties' briefing leaves us uncertain as to exactly what we are reviewing here – whether the IJ in fact required Chen to "provide evidence which corroborates otherwise credible testimony" under § 1229a(c)(4)(B), and, if so, whether there is before us a "threshold determination" as to Chen's credibility and the need for additional corroboration. Given this uncertainty, which significantly impedes our review of Chen's claim, the proper course is to remand to the agency for clarification.

2.

Remand also will give the agency a chance to address our second concern related to its finding of inadequate corroboration. Whatever the precise nature of the IJ's assessment of Chen's corroborating evidence, as explored above, one thing is clear: The absence of corroborating evidence could not be held against Chen unless such evidence was

---

[2] The government also argues that Chen failed to exhaust this issue before the BIA, depriving us of jurisdiction to address it now. *See* 8 U.S.C. § 1252(d)(1); *Atemnkeng v. Barr*, 948 F.3d 231, 240 (4th Cir. 2020). But Chen did argue before the Board that the IJ failed to comply with the corroboration requirements of § 1229a(c)(4)(B) – though he instead cited the parallel provision regarding asylum – and deprived him of notice that additional evidence was needed to corroborate his testimony. That was enough to put this matter before the Board. *See Atemnkeng*, 948 F.3d at 240 (explaining that exhaustion requirement does not bar a petitioner from making more specific points related to a general issue presented to the BIA).

11

"reasonably obtainable" by him. *See Matter of L-A-C-*, 26 I. & N. Dec. at 519 ("[R]egardless of whether an applicant is deemed credible, he has the burden to corroborate the material elements of the claim *where the evidence is reasonably obtainable . . . .*" (emphasis added)); *Wambura*, 980 F.3d at 375 (IJ may not require corroborating evidence for "otherwise credible testimony" without finding that such evidence is "reasonably available"); 8 U.S.C. § 1229a(c)(4)(B) ("Where the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence."). An applicant is entitled to an opportunity to explain why he cannot reasonably obtain any evidence sought by the IJ, and the IJ is required to include that explanation in the record, along with a finding as to whether the explanation is sufficient. *Matter of L-A-C-*, 26 I. & N. Dec. at 519, 521; *Wambura*, 980 F.3d at 372.

In denying relief on Chen's withholding claim, both the IJ and the BIA relied at least in part on Chen's failure to provide affidavits from his minister or fellow church members from China, attesting to his "activities as a Christian" and his arrest during home-church services. A.R. 45 (IJ) ("It would seem to the Court that had [Chen], in fact, been involved in church activities and . . . [been] arrested with members of his church that the minister at least would have provided him with an affidavit that he had been attending church and he had been arrested."); A.R. 4 (BIA) ("The Immigration Judge also noted the respondent failed to provide any additional corroborating evidence concerning his arrest, detention, or activities as a Christian in China."). But Chen repeatedly explained during

12

his hearing why such evidence was not available: his minister and co-religionists feared reprisal from Chinese authorities if they came forward on his behalf. And neither the IJ nor the BIA made any finding as to the sufficiency of that explanation or the reasonable availability of the affidavits hypothesized by the IJ, or even noted Chen's explanation in their opinions.

We leave it to the agency on remand to evaluate Chen's explanation and determine whether evidence from his co-religionists in China was "reasonably obtainable." *See Matter of L-A-C-*, 26 I. & N. Dec. at 519.

3.

We have one last concern about the Board's determination that Chen did not adequately corroborate his claim of past or future religious persecution. In making that finding, neither the IJ nor the BIA assessed or even referred to the two country-condition reports submitted by Chen, which document widespread and alarming state-sanctioned persecution of Christians throughout China – surveillance, harassment, detention, and violent abuse that can culminate in death. *See* A.R. 112–31 (2017 State Department International Religious Freedom Report for China); A.R. 132–75 (2017 State Department Country Condition Report for China). The failure of the agency to engage with this highly material evidence significantly undermines our ability to review its conclusion. *See Rodriguez-Arias v. Whitaker*, 915 F.3d 968, 974 (4th Cir. 2019). Accordingly, we remand so that the agency may offer an explanation that takes account of this evidence. *See id.* at 974–75; *Ai Hua Chen v. Holder*, 742 F.3d 171, 179–81 (4th Cir. 2014).

There is, of course, no categorical requirement that the agency "discuss every piece of evidence in the record." *Ai Hua Chen*, 742 F.3d at 179. But at the same time, the agency must announce its decision "in terms sufficient to enable a reviewing court to perceive that they have heard and thought" about that evidence. *Id.* A "wholesale failure" to consider country-conditions reports is reversible error, and the failure to address and engage with those reports "hampers our ability to meaningfully review what was decided below." *Rodriguez-Arias*, 915 F.3d at 974.

The failure to acknowledge Chen's country-conditions evidence was particularly problematic in this case. The agency premised its denial of relief on a finding that Chen had not met his burden to corroborate his claim, but never accounted for a form of corroborative evidence that could be decisive in establishing the necessary likelihood of future persecution or torture. *See id.* at 975 ("Country conditions alone can play a decisive role in granting relief under the CAT." (cleaned up)); *see also Quitanilla v. Holder*, 758 F.3d 570, 574 n.6 (4th Cir. 2014) (recognizing that "State Department report[s] on country conditions [are] highly probative evidence" considering the "expertise of the Department of State").[3] As the BIA itself has warned, "in deciding whether an applicant has met his

---

[3] Several other federal courts of appeals have had occasion to consider the "decisive role," *Rodriguez-Arias*, 915 F.3d at 975, that may be played in immigration proceedings by country-condition reports detailing persecution of Christians in China, *see, e.g.*, *Guan v. Barr*, 925 F.3d 1022, 1034–36 (9th Cir. 2019) (remanding to agency for consideration of petitioner's CAT claim in light of country reports indicating Christians in China are often subject to torture); *Ni v. Wilkinson*, 849 F. App'x 722, 725–26 (10th Cir. 2021) (remanding to agency after considering petitioner's country conditions reports showing that in 2018 "the government not only had closed churches but also had increased restrictions, like banning online sales of the Bible and depiction of Christian symbols" and reporting that

14

burden of proof, an [IJ] must not place undue weight on the absence of a particular piece of corroborating evidence while overlooking other evidence in the record that corroborates the claim." *Matter of L-A-C-*, 26 I. & N. Dec. at 522.  But on this record, we cannot ensure, as we must, that the agency did not do just that, faulting Chen for failing to provide certain forms of corroborating evidence without considering the evidence he *did* provide, in the form of country-condition reports.  Indeed, those reports have double relevance to this case: They go both to the likelihood of future persecution and torture – fundamental to meeting Chen's burden on his withholding and CAT claims – *and* to whether it would be reasonable to expect his minister or fellow church members to come forward with affidavits detailing their own religious activities – a precondition, as explained above, to relying on the absence of such affidavits in denying relief.

We of course take no position on the ultimate disposition of Chen's claims.  But the failure to account for and engage with relevant country-conditions reports, though not "unprecedented," *see Ai Hua Chen*, 742 F.3d at 180, here frustrates our ability to engage in meaningful appellate review of the agency's final determination as to withholding of removal and CAT protection.  Accordingly, for this reason, too, we remand for additional explanation by the agency.

---

Christian "persecution was growing in both scope and scale in China" (cleaned up)); *Guangjun Deng v. Holder*, 410 F. App'x 15, 17 (9th Cir. 2010) ("The IJ also based his adverse credibility finding on indications in the State Department Reports that Protestants worship freely in China, contrary to [petitioner's] claim of religious persecution. However, the IJ ignored numerous contrary statements in the Reports that freedom of religion 'remained poor' in China and that 'house churches' such as the one [petitioner] attended had been targeted for persecution by government authorities.").

## III.

For the reasons given above, the petition for review is granted, the BIA's decision is vacated, and the case is remanded for further proceedings consistent with this opinion.

*PETITION FOR REVIEW GRANTED;*
*VACATED AND REMANDED*

16